STATE of Missouri,
Plaintiff-Respondent,

v.

Ricky R.R. SMITH,
Defendant-Appellant.

STATE of Missouri,
Plaintiff-Respondent,

v.

Jollie R.A. SMITH,
Defendant-Appellant.

Nos. 13674, 13675.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 28, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 22, 1985.

Application to Transfer Denied
Feb. 26, 1985.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Roy W. Brown, Bruce B. Brown, Brown & Brown, Kansas City, for defendants-appellants.

PREWITT, Chief Judge.

Defendant Jollie R. A. Smith and his brother, defendant Ricky R. R. Smith, were convicted of stealing after taking an automobile owned by Jollie Smith from a garage where it had recently been repaired. The repair bill had not been paid. Both defendants were sentenced to 5 years' imprisonment. Their jury trials were conducted together, and as their contentions here are the same, we consolidated their appeals.

Defendants' first points contend that the evidence was insufficient to establish that they were guilty beyond a reasonable

doubt because there was no showing that they appropriated the vehicle with "the purpose of withholding it from the owner in such a way that made recovery by the owner unlikely."

Section 570.030.1, RSMo 1978 states:

"A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion."

The jury was instructed on the crime of stealing using the portion of the definition of "deprive" set forth in § 570.010(8)(c), RSMo 1978, meaning "To use or dispose of property in a manner that makes recovery of the property by the owner unlikely". The instruction appeared to follow MAI–CR2d 24.02.1.

 In determining if the evidence is sufficient to support the verdict, the evidence and all reasonable inferences must be considered in the light most favorable to the state and all evidence and inferences to the contrary disregarded. *State v. Buffington,* 588 S.W.2d 512, 514 (Mo.App.1979). Even if, as defendants contend, *State v. Siraguso,* 610 S.W.2d 338 (Mo.App.1980), correctly interprets *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), as calling for a more stringent review of criminal cases than Missouri appellate courts had given before *Jackson,* there was evidence to meet that standard here. The evidence was sufficient for a rational trier of fact to find defendants guilty beyond a reasonable doubt.

In late 1982 or early 1983, defendant Jollie Smith's wife, apparently at his request, made arrangements with W. L. Johnson, who owns a garage in West Plains, to repair Jollie's 1979 Renault automobile. Before April 22nd, except for an apparent minor adjustment to be made after the car was driven fifty miles, the repairs were completed. Johnson and Brent Short, a mechanic employed by Johnson, went to Jollie's house in Ravenden, Arkansas to present him the repair bill of $941.36. Jollie was not there and his wife informed Johnson that she could not pay the bill. Johnson and Short returned to West Plains.

Later that day defendant Jollie Smith, defendant Ricky Smith, and their brother, Rowdy, went to Johnson's garage in West Plains. When they arrived around 4:30 p.m. the Renault was not there. Short was apparently driving it to visit some relatives to put the additional mileage on it before the adjustments. Johnson testified that the Smiths said they came to pay for the car and get it. He said he agreed with them that Jollie could test-drive it, but he told them that the repair bill would have to be paid before they could have the car.

Johnson telephoned Short to bring the automobile back to the premises so Jollie could test-drive it. While waiting for Short, the Smiths went to a local restaurant to eat. When they returned, Short was there and the Renault was parked near the garage. While they were discussing the repairs, Jollie went outside to use the toilet. After he was gone 5 to 10 minutes Short went outside where he found Jollie attempting to start the Renault. Jollie said he was going to test-drive it and Short said he was going to go along. Ricky Smith also got in the car. Short testified that Ricky then got out of the car saying he needed to get his "goodie box" and got a large "candy can" from the car in which the Smiths had been traveling.

When they left the garage Jollie Smith was driving. Short was in the front passenger's seat and Ricky was in the back seat. They stopped at a gas station where Jollie bought five dollars worth of gasoline. Then they left West Plains heading toward Koshkonong. After they went a short distance Short objected to the speed that Jollie was driving and asked that they go back to town. Jollie replied that they were going to Koshkonong. Short testified that then he was poked in the side of his ribs by a gun barrel held by defendant Ricky Smith and was forced to get out of the car while it slowed, but did not stop.

Jollie testified that he and Short disagreed as to his manner of driving. Then he

"could feel something in one of the wheels that didn't seem right." He pulled over and Short got out "like he was going to check the tires, I guess. And when he did it just come back to me that me and him had been arguing and I wasn't going to turn around. So I just took off and left him standing there." Defendants denied that they had a gun or that Short was forced out of the vehicle.

Short went to a nearby house where the Howell County sheriff's office was called. The vehicle with defendants in it was stopped in Alton by a city policeman who had received a report from the county sheriff's office. When defendants got out of the car, defendant Ricky Smith ran away. He turned himself into law enforcement officers three days later. Jollie testified that he drove to Alton because he wanted to test-drive the car "through the hills and over curvy roads and really give the car a good drive." He said they intended to go back to the garage to pay for the car.

After Jollie was arrested a deputy testified that Jollie said that he took the vehicle and was not going to pay for the repairs because of the time it took to make them. There was no evidence that the parts could have been obtained faster, that the repairs should have been done sooner, that the repairs were improperly done, or that the charges for them were too high.

Defendants claim that as the parts and labor which Johnson claimed payment for were used on the vehicle and incorporated into it, and Jollie Smith owned it, neither defendant was guilty of stealing it.

■ Sections 570.030 and 570.010 do not appear to change the rule in effect before their enactment that one can be guilty of stealing property that he had legal title to. Although § 570.010(8) refers to "owner" and § 570.030 refers to "property or services of another", there is no indication that they intended to change the decisions that ownership of property necessary to support a charge of larceny may be "either general or special" and "may be supported by proof of any legal interest or special property in the things stolen, although it may be less than an absolute title." *State v. Flowers,* 311 Mo. 510, 278 S.W. 1040, 1043 (1925).

■ "It has long been established that ownership of stolen property may be charged either to the actual owner or the one rightfully in possession and a showing that the property was taken from one who merely had charge and control thereof is sufficient." *State v. McCoy,* 647 S.W.2d 862, 864 (Mo.App.1983). Lawful custody and control of property is a sufficient attribute of ownership to support an averment and proof of ownership. *Id.*

"It is a trite saying that one cannot steal from himself, and that may be true, for the expression implies he is in possession at the time of the supposed crime, and asportation would be lacking. But it is generally conceded that one may steal his own property, which at the time is in the possession of some one else, as, for instance, a bailee, pledgee, and the like." *Cote v. Gillette,* 186 S.W. 538, 540 (Mo.App.1916). This appears to be the general rule in other jurisdictions as well. See 50 Am.Jur.2d, Larceny, § 86, p. 259.

■ It was admitted by defendants at trial and the evidence established that Johnson had the right of possession of the car by virtue of a common-law artisan's lien. See *Poole v. McKeen,* 654 S.W.2d 362, 364 (Mo.App.1983). Jollie Smith had no right to possession of the vehicle as against Johnson until the discharge of that lien. *State ex rel. Rueseler Motor Co. v. Klaus,* 281 S.W.2d 543, 546 (Mo.App.1955). By taking the car from Johnson's possession Jollie Smith could be guilty of stealing. If Jollie Smith could be guilty, it necessarily follows that by helping him, Ricky Smith could also be guilty.

■ Defendants also contend that as Johnson knew where Jollie Smith lived, and as Johnson had an artisan's lien, it is likely he could have recovered the car or collected the debt. That is no defense to the charge. The test is not whether the debt might have been paid or the vehicle recovered.

As § 570.030 states, it is whether defendants had "the purpose to deprive" Johnson of the car as "deprive" is defined in § 570.010(8)(c). The evidence indicates such a purpose existed, whether or not it was successful.

Citing *State v. Siraguso,* supra, 610 S.W.2d at 341, defendants further assert that the circumstantial evidence here did not "exclude all reasonable hypotheses" that they were innocent. They contend that the evidence at the most showed that Jollie intended to take possession of the vehicle without first paying for the parts and labor, but did not establish that he never intended to pay the bill. Assuming that would be a defense, the jury could have found otherwise.

The state's case was not, as defendants contend, based solely on circumstantial evidence. It presented evidence that Jollie Smith admitted that he took the vehicle and was not going to pay for its repairs because of the time it took to make them. Admissions against interest are direct evidence of guilt. *State v. Sherrill,* 657 S.W.2d 731, 738 (Mo.App.1983); *State v. Williams,* 600 S.W.2d 120, 122 (Mo.App. 1980).

The jury could have found beyond a reasonable doubt that Jollie and Ricky went to the garage for the purpose of taking the vehicle without paying for the repairs and did so. Jollie's statements as to his intent so indicate. Defendants' first points are denied.

Defendants contend in their second points that the trial court erred by not submitting a "claim of right" instruction following MAI–CR2d 2.37.3(2). Defendants claim that the vehicle was taken under a "claim of right", which the jury could have found precludes their being guilty of stealing. They assert that a "claim of right to take the Renault for a thorough test drive is sufficiently supported by the evidence." They also contend that there "is no evidence indicating that Jollie did not believe he had a right to take the vehicle and then settle the debt."

Section 570.070, RSMo 1978, provides that a person does not commit stealing under § 570.030, RSMo 1978, if he acted "in the honest belief that he had the right to do so". That section puts the burden on defendant to inject the issue of claim of right and if it is not injected, no instruction on it need be given. *State v. Hontz,* 655 S.W.2d 590, 592 (Mo.App.1983).

"To warrant submission of the claim of right defense, there must be, apart from testimony of the defendant or principal as to his subjective belief, sufficient evidence to enable the court to infer that the relevant person *honestly* held that belief." *State v. Quisenberry,* 639 S.W.2d 579, 584 (Mo. banc 1982).

The burden on the defendant to "inject the issue" of claim of right includes adducing evidence of facts from which in the context of the entire case, the honesty of his belief can reasonably be inferred. *Id.* at n. 15. A claim of right is a special negative defense and inherent in its concept is that the act charged occurred, but by reason of the defense, the act did not possess the qualities of criminality. *Id.* 639 S.W.2d at 583 & n. 8.

The naked assertion of an honest belief in a legal right, unsupported by any evidence of facts or circumstances from which such a belief might reasonably be inferred, is insufficient to raise the issue. *State v. Hontz,* supra, 655 S.W.2d at 592. See also *State v. Sloan,* 664 S.W.2d 41, 43 (Mo.App.1984).

Defendants contend that they never intended to keep the vehicle but were going to return it, apparently acknowledging that they had no right to take it until the repairs were paid for. Their evidence was that it was being taken for a test-drive. There was no dispute that Jollie had the right to take it for a test-drive with Short along. The question for the jury was whether defendants intended to return. Whether they had a purpose to deprive Johnson of it was sufficiently presented to the jury in the submission instructions. Cf.

*State v. Stiers*, 610 S.W.2d 83 (Mo.App. 1980).

 Defendants offered no evidence that the vehicle was taken beyond the consent given. Their claim was that they were still test-driving it with permission. Submitting as a defense that they did not intend to return the car in the honest belief that Jollie had the right to do so was inconsistent with their evidence. As such a claim of right was inconsistent with their evidence, they were not entitled to an instruction upon it. See *State v. Cascone*, 648 S.W.2d 190, 191 (Mo.App.1983). Obviously, if defendants intended to return the vehicle, they could not claim they were keeping it under a claim of right. Defendants' second points are denied.

The judgments are affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.