**STATE of Missouri,
Plaintiff–Respondent,**

v.

**G.H. COX, Defendant–Appellant.**

No. 51730.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 26, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 25, 1988.

Application to Transfer Denied
July 26, 1988.

**856**

Lew A. Kollias, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Chief Judge.

Defendant was convicted by a jury on one count of stealing $150.00 or more by coercion, § 570.030 RSMo. 1986, and on six separate counts of attempt to steal $150.00 or more by coercion, § 564.011 RSMo. 1986. He was sentenced to one year on the stealing count and was sentenced to one week on each of the attempt to steal counts, with the sentences to run and be served consecutively. Defendant appeals. We reverse the stealing conviction and affirm the attempt convictions.

The offenses involve two victims, Mary Bair and Julius Smith. Defendant first argues that the State failed to make a

submissible case on the charge of stealing by coercion from Mary Bair. We agree.

To determine whether the State made a submissible case, we view the evidence in the light most favorable to the verdict and disregard all contrary evidence and contrary inferences. *E.g. State v. Overkamp*, 646 S.W.2d 733, 736 (Mo.1983). We do not weigh the evidence but determine whether the evidence was sufficient for the jury to have found defendant guilty beyond a reasonable doubt. *E.g. State v. Porter*, 640 S.W.2d 125, 126 (Mo.1982). *State v. Gardner*, 737 S.W.2d 519, 521 (Mo.App.1987).

A person commits the crime of stealing by coercion "if he appropriates property ... of another with the purpose to deprive him thereof, ... by means ... of coercion." § 570.030 RSMo. 1986. The statutory definition of coercion "is new and is based on the Proposed Texas Penal Code § 31.01(1) and the Model Penal Code § 223.4 (Theft by Extortion). The definition is meant to codify and clarify related concepts used in defining blackmail-extortion type offenses, .... [It] lists the common types of threats which constitute coercion," § 570.010, Comment to 1973 Proposed Code, (4), and, in addition, gives a general definition to cover the less common cases:

> *"Coercion"* means a threat, however communicated: ....
>
> "(g) To inflict any ... harm which would not benefit the actor". § 570.010(4)(g).

■ The crime of stealing by coercion requires a causal connection between the coercion and the victim's surrender of property. The victim must be frightened by the threat and must surrender property because of the fear. 31 Am.Jur.2d *Extortion, Blackmail and, Threats* §§ 1, 10 (1967). *See State v. Hawkins*, 418 S.W.2d 921, 926 (Mo. banc 1967); *State v. Vandament*, 299 S.W.2d 532, 534–35 (Mo.1957). *See also* Texas Penal Code, § 31.03(1), Commentary. Following this principle, defendant tacitly admits he may have threatened Mary Bair, but, he argues, the State failed to show, beyond a reasonable doubt, that his threat caused her to surrender money to him.

■ Viewing the evidence on this count most favorably to the verdict, the record shows that defendant "represented" Mary Bair in proceedings to obtain social security benefits. The representation began "about February of '84." Defendant and Ms. Bair signed a document which appointed defendant as Ms. Bair's representative. The document contained a clause under which defendant waived his "right to charge and collect a fee for representing Mary Bair."

However, on October 11, 1984, defendant said "he wanted a fourth of [Ms. Bair's] back pay", a fourth of "six hundred and twelve dollars and some cents". Ms. Bair said that defendant also "threatened to have ... the [social security benefits] terminated because he said it was just as easy for him to do that as for him to get it for me." Some time during that day, either before or after this threat, Ms. Bair bought a money order for $153.14. Defendant could not cash the money order. He asked for cash, and Ms. Bair cashed the money order on the same day. Still later in the day, Ms. Bair gave defendant the cash.

The only evidence of a causal connection between defendant's threat and the transfer of money is found in Ms. Bair's direct testimony:

Q: Mrs. Bair, when [the defendant] told you that if you didn't give him the money that he would terminate your [social security benefits], how did you feel?

A: I didn't know what to think for a while.

Q: Okay. Were you afraid?

A: Yeah, a little bit.

Q: Okay. Were you nervous?

A: Yes.

Q: Okay. Would you have given him the hundred and fifty-three fourteen if he hadn't threatened to take away your Social Security?

A: I'm not sure.

This testimony, we believe, leaves more than a reasonable doubt that defendant's threat caused Ms. Bair to give him the money. Just what is reasonable doubt? For years, courts have wrestled with definitions of reasonable doubt and consistently have been pinned to the mat. See, e.g., 9 Wigmore, Evidence § 2497 (Chadbourn rev. 1981). "Reasonable doubt", like its civil counterparts, "preponderance of the evidence" and "clear, cogent and convincing", represent "an attempt to instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. Although [these burdens of proof] are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions." *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368, 379 (1970) (Harlan, J., concurring). In Missouri, we at first defined reasonable doubt for the fact finder, e.g., *State v. Marshall,* 354 Mo. 312, 189 S.W.2d 301, 306 (1945); then, we prohibited any definition more specific than the term itself, e.g., *State v. Lasley,* 583 S.W.2d 511, 514 (Mo. banc 1979); and, then, once again, we defined it for the fact finder:

> A reasonable doubt is a doubt based upon reason. ... [P]roof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. See MAI–Cr2d 2.20, (revised, effective Oct. 1, 1984); See also, MAI–Cr3d 302.04.

The State's evidence in the present case does leave "a doubt based upon reason" and does not leave a reasonable fact finder "firmly convinced of defendant's guilt."

Certainly, a submissible case is not made where the evidence is as consistent with innocence as with guilt. *State v. Gardner, supra* 737 S.W.2d at 521; *State v. May,* 689 S.W.2d 732, 736 (Mo.App.1985). Ms. Bair's testimony that she was "a little bit" afraid and that she wasn't sure whether she would have surrendered her money absent defendant's threat creates almost equally likely and inconsistent inferences: fear may have caused her to surrender her money or it may not have caused the surrender. We have carefully searched the entire record, and we have found nothing, implicit or explicit, to bolster or strengthen this equivocal testimony.

Defendant next argues that his convictions on the five counts of attempt to steal from Ms. Bair put him in double jeopardy. More specifically, he contends these five counts were nothing more than a single offense improperly divided into multiple offenses. We disagree.

On May 17, 1985, defendant came to Ms. Bair's home and demanded that she go to the post office. Defendant expected Ms. Bair to have two social security checks in her mail. Although Ms. Bair testified she received two checks in the month of May, only one check was at the post office on May 17. Of the two checks she received in May, one check was for $2,170 and one was for $434. On May 17, defendant demanded 25% of the check that Ms. Bair collected from the post office. He stated that if Ms. Bair did not pay the money to him, he could have her social security benefits terminated.

On four subsequent days, May 25, 31, June 1, and June 6, defendant demanded either 25% of the same check, or "his money." On each occasion, defendant repeated that he could have Mary Bair's social security terminated if she did not "pay up."

The Fifth Amendment to the United States Constitution protects a defendant against multiple punishments for the same offense, *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665 (1969), and the Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 793–96, 89 S.Ct. 2056, 2061–63, 23 L.Ed.2d 707, 715–717 (1969). This protection precludes the state from splitting a single offense into multiple offenses. *See, e.g. State ex rel Campbell,*

637 S.W.2d 94, 97 (Mo.App.1982).[1]

■ Relevant to this protection is the separate offense rule, which we, in Missouri, follow. *E.g. State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977), cert. denied 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). This rule permits one transaction or set of facts to support separate punishments under two statutes if one statute requires proof of a fact which the other does not. *Id.* The rule, however, has been applied to fact situations, like the present case, in which a defendant is convicted of two or more counts of violating the same statute. *E.g. State v. Childs*, 684 S.W.2d 508, 511 (Mo.App.1984). The factor determining whether the several convictions are identical, it is said, "is whether each offense necessitates proof of an essential fact or element not required by the other." *Id.*

■ In the present case, to prove each attempt charged, the State was required to show (1) defendant committed an act which was a substantial step toward committing the crime of stealing by coercion (2) with the purpose of completing that crime. § 564.011(1) RSMo. 1986. Defendant made threats on five separate days. Each count of attempt was based on a single, separate and distinct threat. Therefore, each count of attempt to steal required proof of a separate act, a threat, which was not required for proof of any of the other attempts. Hence, under the separate offense rule, the five convictions of attempt do not place defendant in double jeopardy.

We need not rest our analysis on this rule, however. Defendant's contention may be more appropriately answered by another analysis.

■ Defendant argues that his five threats constituted a single act of attempted stealing and the individual threats were, at best, corroborative of his single intent to

commit the crime of stealing. To defendant, the intent and act were simply a continuing intent and continuing act. Defendant, thus, raises the question whether there were separate, consecutive crimes or just one continuous crime.

By this argument, defendant would lead us into the quagmire of metaphysics. Did defendant have one continuing intent, verbally manifested on separate days or did he form a new intent manifested by each threat on each day. To avoid metaphysics, we resolve this kind of issue by determining whether there is an identifiable physical termination of the crime charged. *See, e.g. State v. Childs*, 684 S.W.2d at 511 and cases collected therein; *State v. Bowles*, 360 S.W.2d 706, 708 (Mo.1962); *Vaughan v. State*, 614 S.W.2d 718, 722 (Mo.App. 1981); *State v. Toombs*, 326 Mo. 981, 34 S.W.2d 61, 66 (1930). We look to the time and place of commission of the conduct in question. Here defendant's utterances took place on five different occasions. Each occasion was separated by at least one day. This physical separation as a matter of common sense implies a newly formed intent to commit the crime and a new step toward its commission rather than a single continuous intent and act. The word "attempt" means to try. Here, on separate days, defendant simply followed the old adage: "If, at first, you don't succeed, try, try again."

■ Defendant also contends the State failed to make a submissible case on these five counts of attempt to steal. Defendant argues the State did not show the amount of money in question amounted to $150 or more. We disagree.

The record shows that defendant demanded 25% of Ms. Bair's social security check on five separate occasions. Ms. Bair also testified that defendant "wanted 25% plus extras." "Once it was eight hundred and ten and once it was six hundred and some." On cross examination, Ms. Bair

---

1. Missouri law provides the same double jeopardy protections as the Fifth Amendment. *State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977), U.S. *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). We therefore do not address whether Missouri law was violated.

said that the two checks expected in May were for $2170 and $434.

This record, although not explicit, is sufficient to support an inference, beyond a reasonable doubt, that defendant intended to appropriate 25% of the $2,170 check on each occasion, thus, satisfying the $150 or more element of the crimes charged.

■ Finally, defendant contends the State failed to make a submissible case on the sixth count of attempt to steal from Julius Smith. We disagree.

Viewing the evidence on this count most favorably to the verdict, defendant demanded $860 from Julius Smith on January 24, 1985. Defendant told Mr. Smith that if he did not pay defendant the $860, he would have Mr. Smith's social security benefits terminated. Mr. Smith testified that prior to January 29, he had agreed to pay defendant $690.

Defendant argues that because Mr. Smith had agreed to pay $690, the demand for $860 "shows more of a commercial transaction for payment for services rendered, and not a violation of the criminal laws of this state." Defendant cites no law to support his argument and we can find none.

The fact that defendant and Mr. Smith had an agreement for $690 may be relevant but it is not determinative. Section 570.030 RSMo. prohibits the taking of the property from another with the purpose to deprive him thereof by means of coercion. Defendant may be guilty of stealing property to which he has a claim of right if he appropriated it by coercion. One may even be convicted of stealing property to which he has legal title under this statute. *State v. R.R. Smith*, 684 S.W.2d 576, 579 (Mo.App. 1984).

"Coercion" includes a threat "to inflict any ... harm which would not benefit the actor," § 570.010(4)(g) and excludes only a "threat of accusation, lawsuit or other invocation of official action" when defendant has an honest claim to the property. § 570.010(3) RSMo. (1986). Defendant's

statement that he would have Mr. Smith's social security benefits terminated did not fall within this exception. If nothing more, the agreement between Mr. Smith and defendant was for $690, not $860. Had Mr. Smith transferred to defendant $170 more than the agreement required, it would have been caused, logically, by defendant's threat. The strength of this logic supports a submissible case.

Judgment Reversed on Count I. Judgment Affirmed on Other Counts.

CARL R. GAERTNER and SIMEONE, JJ., concur.