STATE of Missouri, Plaintiff–
Respondent,

v.

Debbie SNIDER, Defendant–Appellant.

Debbie SNIDER, Movant,

v.

STATE of Missouri, Respondent.

Nos. 61111 & 63134.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 30, 1993.

Rehearing Denied Jan. 11, 1994.

---

Arthur S. Margulis, David R. Crosby, Margulis & Grant, P.C., Clayton, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant, Debbie Snider, appeals from her conviction of six counts of felony stealing. The evidence showed, over the course of two years, defendant misappropriated over $60,-000 from Rizzo's Top of the Tower restaurant where she was employed as a cashier. Defendant evaded detection by voiding over one thousand guest checks on the cash register receipt to compensate for the money she pocketed. Her peculations were finally discovered when a customer called the restaurant to discuss the service she received. The owner of the restaurant was unable to locate her guest check to determine which waitress had served her. He saw, however, that the caller's name was listed in the reservation book. He then checked the restaurant records and noticed the immense number of

entries which had been voided while defendant was working as a cashier and the corresponding absence of guest checks for persons whose names were noted in the restaurant's reservation book. When the owner of the restaurant accused defendant of stealing money for years, defendant responded "(Y)ears? I've only been doing it for two."

The state brought the following charges against her, listed in chronological order: Count V alleges defendant stole over $150 on or about November 20, 1987; Count VI, on or about November 27, 1987; Count IV, between January 1 and December 31, 1988; Count III, between January 1 and March 28, 1989; Count II, on or about March 29, 1989; Count I, between March 30 and April 12, 1989. Counts V and VI are each based on a single act of stealing in which defendant stole over $150. Since the amount taken by way of one void fell within the felony statute, the state charged defendant separately for Counts V and VI. Counts I–IV, however, were based on thefts occurring over a span of two years. Because none of these voids involved stealing more than $150 the state employed § 570.050 RSMo 1986 to aggregate the amounts stolen into four time periods. Each of these periods included a sufficient number of voids to fall within the $150 requisite amount for a felony conviction. Counts I–IV each included multiple voids defendant made during thirteen, one, eighty-nine, and four hundred and sixty-six days respectively. Defendant was charged, convicted and sentenced on all six of these felony counts. Defendant filed, and the court denied, a 29.15 motion. Although she originally appealed this denial, she has taken no further actions on this motion and at oral argument asked that it be dismissed.

*I.*

We first address defendant's argument that under the totality of the circumstances the trial court coerced a verdict. Defendant raises this issue for the first time on appeal and requests plain error review. She cites *State v. Burns*, 808 S.W.2d 1 (Mo.App.1991), for the proposition that "By definition coercion of a verdict is a matter affecting substantial rights and involves issues of manifest injustice or miscarriage of justice." *Id.* at 2, Rule 30.20.

The relevant facts are as follows. After a five day trial, at 10:38 a.m. on the Friday of the three-day-Labor-Day weekend, the jury began its deliberations on the six-count charge against defendant.

At 3:25 p.m. the jury sent the court a note reading: "If we do not reach unanimous decision by 5:00 p.m., what [sic]." The court responded with the following comment: "there's nothing significant about 5:00 p.m....."

At 4:10 p.m., after deliberating over five hours, the jury sent the court a note stating they could not reach a unanimous verdict and that their decision was split. The court asked for the numerical division of the jury without disclosing whether the jury was leaning towards a finding of guilt. The jury foreman informed the judge that the division was: Count I, six and six; Count II, eight and four; Count III, six and six; Count IV, six and six, Count V, nine and three; Count VI, eight and four. The court then read the hammer instruction (MAI–CR3d 312.10) and sent the jury back for further deliberations.

At 5:25 p.m. the jury forwarded the following letter to the court:

Your Honor,

We are at an impasse—Further deliberations will not change the vote of anyone. We have truly tried in earnest to reach a verdict and have been unable to. I am sorry.

/s/ Pat McWard (foreman)

Vote is 9–3 on every count.

The transcript is devoid of any judicial response to this note.

Then at 6:00 p.m. the jury sent the court a note reading:

Your Honor,

Further deliberation is futile—our views are so firm that anymore deliberations will not change our opinions. We have in all earnesty [sic] tried to reach a verdict but it will not happen with this jury.

/s/ Pat McWard

In response to this note, the court sent written inquiries as suggested in Notes on Use 4,

MAI–CR3d 312.02.[1] The court records do not indicate whether the interrogatories were returned.

At 7:58 p.m. the jury returned a verdict of guilty and recommended two months in jail and a fine on each of the six counts.

■ The length of time which a jury is allowed to deliberate and the determination of whether to read the "hammer instruction" or to administer the interrogatories are within the sound discretion of the trial court and neither of these factors conclusively establish coercion. *State v. Bell,* 798 S.W.2d 481, 485 (Mo.App.S.D.1990). The trial court does not have to accept the jury's claim that it is deadlocked. *State v. Anderson,* 698 S.W.2d 849, 853 (Mo. banc 1985), *State v. El Dorado Management Corp.,* 801 S.W.2d 401, 411 (Mo. App.E.D.1990). Generally, "[b]eing told by a juror that further deliberations would not be helpful in resolving a deadlock does not preclude the trial judge from reading the hammer instruction and certainly does not prevent the trial judge from attempting to facilitate a verdict by giving no additional instruction and allowing further time for deliberation." *Anderson,* 698 S.W.2d at 853 (citations omitted). The verdict is only considered coerced when under the totality of the circumstances it appears that "the trial court [was] virtually [directing] that a verdict be reached and by implication indicated it would hold the jury until a verdict was reached." *State v. McNail,* 767 S.W.2d 84, 87 (Mo.App. E.D.1989).

Defendant cites *State v. McNail, Id.,* for support for her contention that the verdict was coerced. We find that her reliance on *McNail* is misplaced. In *McNail* the defendant was charged with raping his daughter on two separate occasions. The jury started deliberations at 1:05 p.m. on a Saturday of a three-day state holiday. At 5:30 p.m. the jury submitted a note reading: "What happens when we do not agree 100%? Ten of us

have voted guilty on two counts of rape; two have voted not guilty." Over objection the court instructed the jury to continue deliberations. At 7:45 the jury submitted another note to the court reading: "I'm sorry but it seems we cannot agree. The two persons differing feel they cannot in good conscience compromise their opinions. How long must we deliberate before a 'hung jury' is declared?" Again, the court instructed the jury to continue deliberations. At 8:07 the court gave the jury the hammer instruction and an hour later sent the deputy sheriff into the jury room to obtain a list of juror's relatives and friends who would be able to bring a change of clothes and toiletries in anticipation of the jury spending a night at the hotel. Ten minutes after the deputy sheriff left the room, the jury returned a verdict acquitting the defendant on one count and convicting him on the second count.

■ The trial court, in *McNail,* was aware of the jury's position on the question of guilt, as well as its numerical division. The appellate court noted that, in light of these facts, forcing the jury to continue deliberations could constitute coercion. The court also implied that the prosecution's evidence was weak and that the fact that the jury acquitted the defendant on one count and convicted him on the other count while only imposing a minimum sentence for an abhorrent crime indicated that the jury's verdict may have been a compromise. In the case at hand, although the judge knew the jury's numerical breakdown, he was not aware of its disposition when he sent the jury back for further deliberations and submitted the interrogatories. Furthermore, the jury convicted defendant on all counts rather than convicting on some and acquitting on others which could be interpreted to be a compromised verdict. Finally, in *McNail,* the jury had already deliberated through the first day of the three-day holiday weekend and was put un-

---

1. In accordance with MAI–CR3d 312.02 the interrogatories submitted to the jury contained the following sequence of questions for each count charged:
   (1) As to Count I, has the jury unanimously reached a decision finding the defendant either guilty or not guilty:
   Yes ___ No ___

(2) If your answer is yes, indicate whether you have found the defendant guilty or not guilty?
   Guilty ___ Not Guilty ___
If your answer is no, indicate whether, if given more time, you believe you will be able to reach a decision finding the defendant either guilty or not guilty?
   Yes ___ No ___

der the impression that they would be spending the night at a hotel and then deliberating through the second day of the holiday weekend. The opinion does not indicate whether inquiries had been made during voir dire or during deliberations as to whether any of the jurors had plans for the holiday weekend. Whereas, in the present case, the attorneys informed the jury during voir dire that there was a possibility of the case lasting through Friday and ensured that there were no jurors who had conflicting plans. Although the jury reached a verdict on Friday at 7:58 p.m., there would have been ample time for the jury to continue deliberations without being held overnight.

This court's research reveals that defendant's situation is similar to that which can be found in *State v. Anderson*, 698 S.W.2d at 849. In *Anderson*, after four hours of deliberations, the jury reached a verdict on one count and claimed it was hopelessly hung on the remaining two counts. The judge asked the foreman how the last vote stood without reference to guilt. The foreman responded that the jury was ten and one on one count and nine and three on the other count. The court then read the hammer instruction. More than one hour later, the jury reported for the second time that it was hopelessly hung. The court did not reply to this information. Forty minutes later, the jury communicated deadlock for the third time. The judge let the jury continue deliberating for twenty-five minutes before the jury convicted on two counts and acquitted on the third. Our Supreme Court affirmed the verdict finding that there was insufficient evidence of coercion.

Furthermore, in *State v. Bell*, 798 S.W.2d 481 (Mo.App.S.D.1990), the court affirmed the verdict reached after the jury was given the hammer instruction and the interrogatories and forced to deliberate until 3:20 a.m. although it had earlier informed the court that it was deadlocked on one of the counts. The court noted that the interrogatories were given in accordance with the Notes on Use 4 to MAI–CR3d 312.02; the interrogatories were also properly administered in defendant's case. Defendant contends that these interrogatories, in light of the surrounding circumstances, led to a coerced verdict. The interrogatories, however, do not contain any coercive language. They are merely designed to ascertain whether the jurors reached a verdict on any of the counts and whether they think that additional time will be helpful.

For all of the above reasons, we find that there is insufficient evidence of coercion in this case. *Point denied.*

## II.

The next issue is defendant's claim that the trial court erred in allowing evidence that, during the same time she was charged with stealing, she purchased approximately sixty to eighty instant and eighty regular Illinois Lottery tickets per day. Defendant argues that the desire or need for money is universal and her need for funds to purchase lottery tickets is, therefore, irrelevant, was improperly admitted and was unduly prejudicial in that it characterized her as a spendthrift or a gambler. She also contends this information does not tend to show a sudden acquisition of wealth or a motive to commit the crimes charged. While we concede that there are times when one's spending would be irrelevant on this basis, we find that, under the facts of this case, defendant's extravagant spending was properly admitted.

The trial court is vested with broad discretion in ruling on questions of relevancy of evidence; absent a clear showing of abuse of that discretion, the appellate court should not disturb the trial court's ruling. *State v. Brown*, 718 S.W.2d 493, 494 (Mo. banc 1986) "Evidence is relevant if it logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal matter at issue." *State v. Driscoll*, 711 S.W.2d 512, 516 (Mo. banc 1986), *cert. denied*, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986); *State v. Jackson*, 738 S.W.2d 510, 512 (Mo.App.E.D. 1987). Evidence which establishes a defendant's motive for the crime for which he is on trial is relevant. *See State v. Ottwell*, 852 S.W.2d 370 (Mo.App.E.D.1993).

In most cases the mere possession of money is not relevant to a charge of larceny

because of money's fungible nature. *State v. Endres,* 741 S.W.2d 788, 790 (Mo.App.E.D. 1987), *State v. Muhammad,* 690 S.W.2d 427, 430 (Mo.App.E.D.1985). However, the court may admit this type of proof when the defendant's possession or spending of the money is suspect due to: the vast amount of money involved in proportion to the defendant's financial situation, a sharp deviation in defendant's spending habits, a similarity between the amount stolen and the amount the defendant possessed or spent a short time after the crime occurred, *Endres,* 741 S.W.2d at 790, or defendant's inability to produce solid proof of an alternative source of the money, *State v. Saffold,* 639 S.W.2d 243, 247 (Mo. App.W.D.1982). *See People v. Cox,* 286 N.Y. 137, 36 N.E.2d 84 (1941). Further, even if the court errs in admitting this type of evidence, the mistake is considered harmless in a case in which there is strong evidence of guilt. *Endres,* 741 S.W.2d at 790 (citing *Muhammad,* 690 S.W.2d at 430) (further citations omitted).

■ In this case there was evidence that defendant's only job was that of a cashier at Rizzo's Restaurant. She earned approximately $270 *per week;* she spent approximately $140–$160 *per day,* in cash, on Illinois lottery tickets. Although the evidence showed that defendant won $10,000 playing the Lottery, it appears from the transcript that this occurred after she had been purchasing such a large number of tickets for some time. Also, no solid evidence was presented of alternative sources of personal income, *i.e.,* other employment, trust fund assets, inheritance, stock dividends, loans, etc. Defendant's only explanation for her ability to purchase these tickets was that other people gave her the money to buy the tickets for them.

Defendant claims that under *State v. Saffold,* 639 S.W.2d 243 (Mo.App.W.D.1982), this information should be excluded. In *Saffold,* the court held "the sudden acquisition of wealth consequent to a theft, if unexplained, is a circumstance, among the others, to prove that the possessor is guilty of the offense." *Id.* at 247. Defendant's argument hinges on the words "if unexplained." She believes that her bare allegation, that her coworkers gave her money to purchase tickets for them, provided a sufficient explanation to satisfy the *Saffold* test and the evidence should therefore have been omitted. The very facts of *Saffold* demonstrate that this was not the type of explanation which the court contemplated. In that case the defendant spent $9,800 immediately following the theft of $80,000 from a bank. He testified that this money came from the $10,333.30, which constituted an accumulation of his wife's, his girlfriend's and his earnings, which he kept in a briefcase in his basement. Despite this "explanation" for his ability to purchase almost $10,000 worth of goods, the court admitted testimony concerning his spending. *Id.* at 245–156. Whether or not defendant collected money from her coworkers to purchase lottery tickets is a question with which the jury could grapple. It is certainly not the type of solid proof of an alternative source of funds which would foreclose the state from inducing sudden acquisition of wealth or motive testimony.

The vast amount of money defendant spent on a daily basis despite her modest income, in the absence of explanatory evidence of an alternative source for this income, is relevant both as evidence of defendant's sudden acquisition of wealth, basically stemming from her ability to pay for these tickets, and evidence of motive, in that she needed a great deal of money to support her daily habit of purchasing lottery tickets. *Point denied.*

### III.

Defendant next avers that by utilizing § 570.030 to aggregate the misdemeanor counts, the state conceded her actions constituted "a single scheme or course of conduct" and "a single criminal episode" and is estopped, if not prohibited under § 556.041, from dividing these incidents into multiple felony counts. She contends that when the state charged, convicted and punished her with six rather than one felony counts, it acted in a manner which the legislature did not intend and violated her Fifth Amendment rights.

We first affirm Counts V and VI. They involved individual incidents in which defendant stole over $150 and the state did not

employ the aggregation statute. These counts do not constitute part of the scheme of conduct present in Counts I–IV. Each count, V & VI, were separate felonious takings whereas the subsequent takings were misdemeanor takings which were aggregated to charge the defendant with four additional counts of felonious taking. Accordingly, the state did not err when it separately charged these two counts. We also find no merit in defendant's additional argument that the state needed to employ the aggregation statute for Counts V. and VI because defendant stole legal tender and no one denomination was valued over $150. This improvident reasoning implies that a person who breaks into a bank and steals a million one dollar bills has only committed a misdemeanor unless the state employs the aggregation statute whereas a person who steals a check for $151 has committed a felony. Such rationale is non sequitur. As hereinafter discussed, Counts I–IV present a disparate examination.

Before we begin our analysis of Counts I–IV, we speak to the state's contention that defendant waived her double jeopardy argument since she raises it for the first time on appeal. In response, defendant first claims that she did not voluntarily and intelligently waive her constitutional right against double jeopardy. Second, she argues that double jeopardy is an unwaivable right since it is an "assertion of a constitutional grant of immunity" which "[goes] to the very power of the state to bring the defendant into court to answer the charge brought against him." *State v. Cody*, 525 S.W.2d 333, 335 (Mo. banc 1975) (quoting *Blackledge v. Perry*, 417 U.S. 21, 30–31, 94 S.Ct. 2098, 2103–04, 40 L.Ed.2d 628 (1974), *overruled on other grounds, Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)), *overruled on other grounds, State v. Heslop*, 842 S.W.2d 72, 75 (Mo. banc 1992) *cert. denied*, —— U.S. ——, 113 S.Ct. 2369, 124 L.Ed.2d 275 (1993) (further citations omitted). Third, under *State v. Bacon*, 841 S.W.2d 735, 741–42 (Mo. App.S.D.1992), defendant notes that "the double jeopardy protection against multiple punishments does not arise until the time of sentencing," *Id.* at 741. Since a sentence is assessed after the motion for new trial is overruled, defendant alleges that the only opportunity she had to lodge a complaint is on appeal or during a collateral post-conviction attack. In the event that the issue was not properly preserved, defendant requests plain error review.

We believe, that although the state exceeded the authority granted to it by the legislature in the way it charged, convicted and punished defendant in Counts I–IV, her double jeopardy rights were not implicated. However, we will consider the claim under provisions in Rule 30.20 for plain error review concerning problems with the indictment, verdict, judgment or sentencing.

## Defendant's Fifth Amendment Rights Not Violated

▮▮▮▮ The Fifth Amendment Double Jeopardy Clause contains two distinct protections for criminal defendants: (a) the protection from successive prosecutions for the same offense after either an acquittal or a conviction; and (b) a protection from multiple punishments for the same offense. *State v. McTush*, 827 S.W.2d 184, 187 (Mo. banc 1992). The prohibition against multiple punishment is "designed to ensure that the sentencing discretion of the court is confined to the limits established by the legislature." *Hagan v. State*, 836 S.W.2d 459, 462 (Mo. banc 1992) (quoting *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984)) (further citations omitted). Under Missouri's separate or several offense rule, "multiple convictions are permissible if the defendant has in law and in fact committed separate crimes." *State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977) (citations omitted), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). In determining whether a person's double jeopardy rights have been violated, two offenses are not the "same" if "each offense necessitates proof of a fact which the other does not." *State v. Charles*, 612 S.W.2d 778, 781 (Mo. banc 1981) (citing *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), *cert. denied*, 454 U.S. 972, 102 S.Ct. 522, 70 L.Ed.2d 392 (1981)).

Defendant's claim that the state violated her double jeopardy rights only exist if the individual thefts, on their own right, or by way of the aggregation statute, constitute one crime. We first note that although defendant consistently peculated funds in the same manner, the thefts occurred over the course of two years, were separate and distinct and were proven by different evidence. We may also assume these thefts were based on separate criminal impulses. In *State v. Cox*, 752 S.W.2d 855 (Mo.App.E.D.1988), the defendant was convicted of five counts of attempting to steal $150 by coercion. He contested his convictions claiming that his five acts of threatening the same victim on separate days were motivated by one criminal intent and constituted a single scheme. The court held that rather than trying to ascertain whether the defendant possessed a continuing intent or formed a new intent each time he threatened the victim, it should consider the time and place of the commission of the conduct in order to determine whether there is an "identifiable physical termination of the crime charged." *Id.* at 859 (further citations omitted). The court found that since each threat occurred on a separate day it implied that he had formed a new intent to commit the crime each time he threatened the victim. *Id.* We can, therefore, assume that in the present case defendant was acting on a new criminal impulse each time she took money from the cash register. Accordingly, there is no question that without the aggregation statute the state had a right to charge each incident separately without violating defendant's Fifth Amendment rights. *See also Biddle v. Wilmot*, 14 F.2d 505 (8th Cir.1926) (upholds defendant's conviction on three counts of bribery as each act constituted a separate offense even though they were all meant to serve the same purpose); *Heslop*, 842 S.W.2d at 76 (defendant not placed in double jeopardy by separate convictions and sentencing for stealing two trucks); *State v. Foster*, 838 S.W.2d 60, 67 (Mo.App.E.D.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1607, 123 L.Ed.2d 169 (1993) (defendant's Fifth Amendment rights were not necessarily violated by his convictions and sentencing on five counts of attempting to promote child pornography in the first degree, even though he took the photographs at the same location within a short period of time).

The state's use of the aggregation statute in charging defendant also does not implicate her Fifth Amendment rights. The aggregation statute states:

> Amounts stolen pursuant to one scheme or course of conduct, whether from the same or several owners and whether at the same or different times, *constitutes* a *single* criminal episode and *may* be aggregated in determining the grade of the offense. § 570.050 RSMo 1986 (emphasis added).

This statute enables the state to *artificially* combine misdemeanors into a single felony count. Although its prerequisite is that the incidents be based on "one scheme or course of conduct," the statute does not require that the thefts be motivated by the same criminal impulse. This is apparent by the fact that the amounts may be stolen from different owners at different times. Also, where the thefts were induced by the same criminal impulse, the state would be obligated to charge them together. *State v. Stegall*, 360 Mo. 31, 226 S.W.2d 720, 722 (1950) (citing 52A C.J.S. *Larceny* § 53, 60 (1968) (further citations omitted), *See also* Peter G. Gunthrie, Annotation, *Series of Takings Over a Period of Time as Involving Single or Separate Larcenies*, 53 A.L.R.3d 398, 404 (1973). Whereas, under the language of the aggregation statute, "(amounts stolen) *may* be aggregated," the state has the option of whether to proceed with separate misdemeanors or an aggregated felony count. Therefore, the term "single criminal episode", which our Supreme Court noted was "born of ambiguity," *Heslop*, 842 S.W.2d at 75, and the term "one scheme or course of conduct," within the context of the aggregation statute cannot imply double jeopardy "sameness." Instead, these phrases refer to a series of (stealing) acts bearing similarities in the manner in which they are performed. Accordingly, the state's use of the aggregation statute is not a concession that defendant's actions constituted a single crime and defendant was not duplicitously punished for the "same" offense in terms of double jeopardy analysis.

**State Exceeded Its Authority When It Employed Aggregation Statute to Convert Numerous Misdemeanors Into Multiple Felony Counts**

Nevertheless, the question remains: in enacting Missouri's aggregation statute, did the legislature intend that the state be allowed to combine numerous misdemeanors which are part of "one scheme or course of conduct" and a "single criminal episode," into multiple felonies counts. If the legislature did not so intend, to uphold defendant's convictions on Counts I–IV would constitute a "miscarriage of justice," which would be reversible under plain error. Rule 30.20.

As this is an issue of first impression in Missouri, our analysis begins with an examination of legislative intent. Because Missouri's aggregation statute permits the state to artificially combine misdemeanor acts which do not ordinarily belong together and can be separately charged, the state must not stray from the limited manner in which the legislature prescribed that this statute be used. In *State v. Heslop*, 842 S.W.2d at 75, our Supreme Court stated, "Section 570.050 serves the limited purpose of permitting the state to combine the value of *all* property stolen during a single course of conduct to determine (whether) a defendant may be charged with a Class C felony or must be charged with a lesser offense." (Emphasis added). The Court in *Heslop* noted that the state is permitted to aggregate the value of the property stolen because "the severity of a stealing charge is a function of the value of the items stolen." *Id. See also* Comment to 1973 Proposed Code for § 570.050 V.A.M.S.

In further support defendant claims that once the state concedes her actions constitute "one scheme or course of conduct" and "a single criminal episode" by utilizing the aggregation statute, under § 556.041 RSMo 1986, the state is prohibited from convicting her on multiple felonies. Section 556.041 states in relevant part:

> When the *same conduct* of a person may establish the commission of more than one offense he may be prosecuted for each such offense. *He may not, however, be convicted of more than one offense if . . . .*

(4) The offense is defined as a *continuing course of conduct* and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses. (Emphasis added).

Defendant erroneously relies on this statute. Section 556.041, which deals with limitations on convictions for multiple offenses, was not meant to constitute a statement concerning the rules of double jeopardy. *See* Comment to the 1973 Proposed Code for § 556.041 V.A.M.S. This statute is also inapplicable unless one is dealing with multiple convictions for the "same conduct" or a "continuing course of conduct . . . (which is) uninterrupted." Although defendant misappropriated money in an identical manner, save the two single acts charged in Counts V and VI, over the course of two years, this is unlike a case in which a person sets up an illegal scheme and then, through no additional actions on his or her part, continues to reap the benefits of his or her original act. Each time defendant pocketed money from the cash register and voided another entry she violated our laws yet again. Her actions constituted "separate and distinct" acts of stealing which can be proven by different evidence. It would strain common sense to say that her course of conduct, involving thefts occurring over two years motivated by separate criminal impulses, was "uninterrupted." Accordingly, § 556.041 is not relevant to our analysis.

Nevertheless, we find that the penalty statute and the official comment to the aggregation statute indicate that the legislature did not intend that defendant be charged with several felony counts under the circumstances of this case. The Comment to the 1973 Proposed Code for § 570.050 V.A.M.S. states:

> The grading of theft offenses is primarily based on the property stolen. If more than one item is stolen as part of a single scheme or course of conduct, it should be possible to impose felony penalties if the total value is $150.00 or more. *But by the same token penalties should not be combined by artificially breaking up a single course of conduct into separate offenses.* (Emphasis added).

The state asks us to ignore this Comment and argues that a person who steals $60,000 must receive greater punishment than one who steals $150. It emphasizes that the outcome of this case will strongly affect its ability to punish defendants in proportion to the crimes they commit in continuing offense cases.

We first note that the state elected, for whatever reason, to proceed under the aggregation statute rather than to charge defendant with multiple misdemeanors. Furthermore, an analysis of the penalty statutes reveal defendant could have received up to a $20,000 fine in addition to seven years incarceration for the one felony stealing offense. § 560.011 RSMo 1986. The monetary penalty reflects the amount of money that a defendant stole.[2] Had defendant been charged with a consolidated felony count and the state put on proof for the one count that defendant misappropriated over $60,000 during a two year span, both the jury's verdict and the judge-imposed fine may have been harsher.[3] Moreover, the wording in the penalty statute suggests that regardless of how much a person steals, he or she has still only committed one class C felony. Section 570.-030 RSMo 1986 reads: "stealing is a class C felony if: (1) The value of the property or services appropriated is one hundred and fifty dollars *or more....*" (Emphasis added).

Although we commiserate with the state's predicament and the problems associated with trying to offer proof on numerous misdemeanors involving small amounts of money, we emphasize that we are not a super legislature and it is not our place to rewrite the statutes to create a "super" felony stealing charge for cases involving continuous crimes. If the legislature desires, it can adopt an incremental charging procedure, varying either the classification of the felony or the potential punishment based on the amount of money stolen. Several states have already implemented this type of charging procedure. For example, in Illinois, a theft

not exceeding $300 is a class A misdemeanor; a theft of at least $300 but less than $10,000 is a class 3 felony; a theft of at least $10,000 but less than $100,000 is a class 2 felony; a theft of property of a value in excess of $100,000 is a class 1 felony. S.H.A. 720 ILCS 5/16–1(b) (Smith–Hurd 1992). Under Missouri law as it currently exists, however, we hold that once the state elects to utilize § 570.030, it is limited to charging a defendant with one felony.

■ Having successfully argued that the state erred in using the aggregation statute, as to Counts I–IV, defendant asks that we reverse and remand or alternatively remand for resentencing on one of the four counts of which she was convicted below. Her later request is untenable. The state has a right to re-indict defendant and bring her to trial on the evidence which previously supported the separate Counts I–IV in a single count. Retrial in this manner will not violate defendant's Fifth Amendment rights. In *Ball v. United States*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), defendants obtained a reversal of their murder convictions because their indictments were fatally defective. After they were convicted on retrial they appealed claiming the second trial was barred by their rights against double jeopardy. The United States Supreme Court held that:

> (A) defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted. Id. at 672 [16 S.Ct. at 1195.] (citations omitted). *But see, Burks v. United States*, 437 U.S. 1, 14–15 [98 S.Ct. 2141, 2148–49, 57 L.Ed.2d 1] (1978) (restricts holding in *Ball* to cases involving trial error).

The Supreme Court later clarified the reason for this rule in *United States v. Tateo*, 377 U.S. 463 [84 S.Ct. 1587, 12 L.Ed.2d 448] (1964) when it stated:

> Corresponding to the right of an accused to be given a fair trial is the societal

---

2. The fine is also judicially ascertained by taking into consideration the proportionate impact it would have on the particular defendant and the way it would impair his or her ability to compensate the victim. § 560.026 RSMo 1986.

3. Charged with six separate counts, Defendant only received two months incarceration and a $1,000 fine on each count and Count I, II and III were to be served concurrently with Count IV, V and VI.

interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. *Id.* at 466, 84 S.Ct. at 1589.

Because of the disposition of this matter, we need not address defendant's fourth claim of error that "on or about" language in the indictment and the jury instruction possibly induced the jury to consider evidence related to counts I and III to convict defendant on count II.

We therefore affirm the judgments of Counts V and VI and we reverse and remand the judgments pertaining to Counts I, II, III and IV for further proceedings consistent with this opinion. Defendant's 29.15 motion is dismissed.

SIMON, P.J., and GRIMM, J., concur.