

# In the Missouri Court of Appeals
# Eastern District
### DIVISION FIVE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102418 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | |
| ANTHONY UMBERTINO, | ) | Hon. Michael D. Burton |
| | ) | |
| Defendant/Appellant. | ) | FILED: April 5, 2016 |

## OPINION

Anthony Umbertino appeals the trial court's judgment after a jury convicted him of felony stealing. We affirm.

## Background

Umbertino was the long-time police chief of the City of Charlack. In 2007, he was given the additional position of city administrator, *i.e.*, the City's chief financial officer. In that role, Umbertino was authorized to write checks from City accounts, had access to signature stamps and a City credit card, and worked with the City's accountant on payroll.

On multiple occasions between 2008 and 2012, Umbertino instructed the accountant to manipulate his pay schedule and issue him several pay advances resulting in salary overpayments totaling over $20,000. Umbertino also collected compensation in

the form of vacation buyouts (*i.e.*, payment in lieu of paid vacation time) exceeding his accrued vacation time. During the same period, Umbertino used a City credit card to pay for personal expenses while on vacation in Hawaii. The State charged Umbertino with one count of felony stealing and one count of public servant acceding to corruption for obtaining personal loans from the City.

At trial, Sergeant David Bauer testified that Umbertino's conduct was discovered when Umbertino provided Bauer with credit card statements evidencing misconduct by the City's mayor. Bauer subsequently remitted the records to the prosecutor, who asked Bauer to open an investigation into Umbertino's own use of the City's credit card. When Bauer interviewed Umbertino about the Hawaii charges, Umbertino claimed that he had misplaced his personal credit card, so he used the City's card while on vacation and then paid off the charges on his return using funds borrowed from the City in the form of an employee loan, though Umbertino had previously told Bauer that it was illegal for public officials to receive employee loans.

Bauer also testified about internal memoranda revealing that Umbertino instructed the City's accountant to issue him paychecks months in advance. The State's expert, Karen Laves, testified that, between 2007 and 2012, Umbertino received seven extra paychecks that did not correspond to vacation or overtime. She also testified that, in 2007 and 2008, Umbertino collected vacation pay 98 hours in excess of his accrued time.[1] At

---

[1] We are unable to decipher from the record, filed without exhibits, the precise total that Umbertino collected in excess of that to which he was entitled. For example, Ms. Laves testified that, based on certain assumptions, the amount corresponded to a negative balance of 418 vacation days, but she also conceded, based on other assumptions, that Umbertino did not collect excess vacation pay if annualized over the period. Laves did observe, however, that, Umbertino's personal bank account balance was nominal or overdrawn each time he collected vacation pay.

the close of the State's evidence, Umbertino moved for acquittal on the second count (public servant acceding to corruption), and the trial court dismissed that count.

In his defense on the remaining count (felony stealing), Umbertino called expert John McGowan to opine whether the pay advances were excess compensation or rather loans. The State objected on the basis that the inquiry called for a conclusion on the central question whether fraud had occurred. The trial court sustained the objection to the extent that McGowan might describe the payments as loans because such an opinion invaded the province of the jury; but the court permitted McGowan to testify about basic accounting principles governing the characterization of pay advances as receivables.

At the close of evidence, Umbertino requested a jury instruction for a claim-of-right defense permitting the jury to find that Umbertino honestly believed that he had a right to retain the City's funds. The trial court denied that instruction.

The jury found Umbertino guilty of felony stealing. The trial court sentenced him to five years in prison but suspended execution of sentence and placed Umbertino on probation with conditions that he complete 120 days of shock time and pay full restitution.

Umbertino appeals and asserts that the trial court abused its discretion by (1) refusing to instruct the jury on his claim-of-right defense, (2) admitting evidence that Umbertino used the City's credit card for personal expenses, and (3) precluding McGowan's testimony as to whether Umbertino committed fraud.

Our standard of review for all three of Umbertino's points is the abuse-of-discretion standard. Generally, an abuse of discretion occurs when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock

one's sense of justice and indicate a lack of careful consideration. State v. Johnson, 207 S.W.3d 24, 40 (Mo. 2006). Where reasonable persons can differ about the propriety of the action taken by the trial court, no abuse of discretion will be found. Id. The defendant bears the burden of showing a real probability that he was prejudiced by the abuse of discretion. Id.

**Analysis**

*Jury Instruction*

For his first point, Umbertino asserts that the trial court abused its discretion by rejecting his proposed jury instruction on a claim-of-right defense. That defense, codified in §570.070, provides that a person does not commit the offense of stealing if, at the time of the appropriation, he acted in the honest belief that (1) he had the right to do so or (2) the owner, if present, would have consented to the appropriation. §570.070.1. The burden of injecting the issue rests on the defendant. §570.070.2.

"In determining whether a refusal to submit an instruction was error, 'the evidence is viewed in the light most favorable to the defendant.'" State v. Pulley, 356 S.W.3d 187, 192 (Mo. App. E.D. 2011). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." Id. "The issue is not submitted to the trier of fact unless supported by the evidence." State v. Quisenberry, 639 S.W.2d 579, 583 (Mo. banc 1982). "The burden on the defendant to 'inject the issue' of claim of right includes adducing evidence of facts from which, in the context of the entire case, the honesty of his belief can reasonably be inferred. State v. Smith, 684 S.W.2d 576, 580 (Mo. App. S.D. 1984). "The naked assertion of an honest belief in a legal right, unsupported by any evidence of facts or

4

circumstances from which such a belief might reasonably be inferred, is insufficient to raise the issue. Id.

In Smith, the defendants, charged with stealing a car, presented a theory of defense that they were test-driving the car and intended to return it. In rejecting their claim-of-right instruction, the court reasoned that the premise of the instruction - an honest belief that they were entitled to keep the car - was inconsistent with their claim that they intended to return it. Id. at 581. Similarly here, Umbertino presented the theory that no one in the City knew precisely what he "was supposed to actually be earning by way of salary," so a jury could reasonably infer that Umbertino had an honest belief that he was entitled to the extra checks. But, as in Smith, this theory is inconsistent with evidence that Umbertino pledged to repay the salary advances (*i.e.*, to "return the car") by forfeiting later paychecks. Umbertino's own correspondence to the City's accountant confirms this.[2] "Obviously, if defendants intended to return the vehicle, they could not claim they were keeping it under a claim of right." Id. Likewise here, given the clear evidence in the record that Umbertino took pay advances with the purported intention to repay them, he could not also claim that he had a right to keep them.

The trial court did not abuse its discretion in rejecting Umbertino's claim-of-right instruction. Point I is denied.

---

[2] In fact, the accountant's testimony, supported by Umbertino's correspondence to her, established that Umbertino repeatedly demanded early paychecks that he never restituted, while the City's coffers lacked sufficient funds to pay other employees and third parties in a timely manner. In 2010, Umbertino wrote, "The gas bill has not been paid since January. … The total bill is now over 17K." Additionally, Umbertino instructed the accountant to withhold payments to the municipal judge and prosecutor within two weeks after he directed her to issue himself the remaining $450 balance on a $2,500 loan from the City.

*Evidence of Misuse of the City's Credit Card*

For his second point, Umbertino contends that the trial court abused its discretion by allowing the State to adduce evidence that he used the City's credit card for personal expenses while on vacation in Hawaii. Specifically, Umbertino claims that this was evidence of uncharged wrongdoing adduced to establish a propensity to commit crime and therefore inadmissible.

The State responds that the evidence of Umbertino's credit card use was relevant to the charge of acceding to corruption by accepting a personal loan from the City. The State also notes that Umbertino did not preserve this point, so this court should review only for plain error. Rule 30.20 permits this court to consider plain errors affecting substantial rights when we find that the error resulted in manifest injustice or a miscarriage of justice. We find no error, manifest injustice, or even abuse of discretion here.

The evidence pertaining to Umbertino's use of the City's credit card, adduced through Sergeant Bauer, was relevant to the State's case in chief as originally charged in the information. The credit card evidence pertained to: how the State came to investigate Umbertino initially; what vacation time was taken or paid (or both, as alleged); and, most importantly, whether Umbertino borrowed money from the City in the form of an employee loan, which Umbertino knew to be illegal for public officials. This was central to the charge of acceding to public corruption. The fact that this count was subsequently dismissed does not render the evidence inadmissible retroactively. See State v. Pippenger, 708 S.W.2d 256, 268 (Mo. App. S.D. 1986) (evidence relevant to charge on which defendant was acquitted was not retroactively inadmissible). Point II is denied.

*Exclusion of Expert Testimony as to Commission of Fraud*

For his third point, Umbertino asserts that the trial court abused its discretion by precluding expert McGowan's opinion as to whether Umbertino's extra paychecks constituted fraud or merely a poorly recorded loan. The State counters that the ruling was proper because the question invited a conclusion on the ultimate issue before the jury.

"Every expert opinion to a certain extent 'invades' the province of a jury in the sense that it constitutes a conclusion gathered from facts." State v. Pickens, 332 S.W.3d 303, 321 (Mo. App. E.D. 2011), citing State v. Pagliano, 319 S.W.2d 613, 623 (Mo. 1958). "[T]he general purpose of expert testimony is to assist the jury in areas that are outside of everyday experience or lay experience." Id. A court should not admit an expert's opinion "unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." Id. If the subject is one of everyday experience, where the jurors are competent to decide the issues, then opinion testimony is properly rejected. Id. For instance, "the expert may not express an opinion as to the guilt or innocence of the defendant. To do so would usurp the decision-making function of the jury." Id. at 322. (internal citations omitted)

The record reveals that the trial court respected the foregoing principles. After a thorough sidebar exchange with counsel on this line of questioning, the court allowed McGowan to explain how, under general accounting rules, a pay advance should be recorded as a receivable rather than as an expense. However, the court prohibited McGowan from characterizing the payments as loans or opining whether Umbertino possessed the intent to permanently deprive the City of funds, as such a conclusion

constituted an opinion on the defendant's guilt or innocence and thus usurped the decision-making function of the jury. We find no abuse of discretion in the trial court's careful resolution of the issue. Point III is denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Lisa Van Amburg, Chief Judge

Mary K. Hoff, J., and
Roy L. Richter, J., concur.

8