

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| D.B., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD86542 |
| | ) | |
| MISSOURI STATE HIGHWAY PATROL | ) | Filed: July 9, 2024 |
| CRIMINAL JUSTICE INFORMATION | ) | |
| SERVICES, BUCHANAN COUNTY | ) | |
| PROSECUTING ATTORNEY(S), | ) | |
| CIRCUIT ATTORNEY(S), | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Buchanan County**
**The Honorable Kate H. Schaefer, Judge**

**Before Special Division: W. Douglas Thomson, Presiding Judge,**
**Alok Ahuja, Judge, and Zel M. Fischer, Special Judge**


D.B.[1] filed a petition in the Circuit Court of Buchanan County ("trial court"), seeking expungement of two felony convictions from 2004 pursuant to section 610.140.[2] The trial court granted D.B.'s petition in part, expunging one of

---

[1] We refer to the appellant by initials, since "[i]t would defeat the spirit of the expungement statute" to use his name in a published opinion, and thereby make a public record of convictions otherwise subject to expungement. *R.G. v. Mo. State Hwy. Patrol*, 580 S.W.3d 38, 39 n. 1 (Mo. App. W.D. 2019).

[2] Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2023 Cumulative Supplement.

his two convictions. The court held that it could not expunge both convictions, because the two felonies were not "committed as part of the same course of criminal conduct" within the meaning of section 610.140.1. We affirm.

## Factual and Procedural History[3]

On April 26, 2004, D.B. was arrested outside a retail store where he had purchased supplies for manufacturing methamphetamine. His vehicle was searched, and additional methamphetamine-related paraphernalia was discovered. D.B.'s home was then searched, and police seized chemicals and cooking equipment with which D.B. had manufactured methamphetamine. D.B. testified "they confiscated everything."[4] D.B. was charged with one count of distribution or manufacture of a controlled substance under section 195.211, RSMo Cum. Supp. 2003 (transferred to section 579.055 in 2017).

At the evidentiary hearing on his expungement petition, D.B. testified that while he was in jail, he was "not physically making meth," though he claimed to be "still involved in [his] drug operation." D.B. testified that while in jail he tried to get money he was owed from those to whom he had "fronted" methamphetamine, because he "needed the money more so while I was in jail because I wasn't able to make it at all." D.B. testified that he was also having household items sold "in order to pay a house payment or, you know, so me and [girlfriend] could have a little bit

---

[3] "When reviewing a court-tried case, we view the facts and reasonable inferences in a light most favorable to the judgment." *G.E.G. v. Gauert*, 620 S.W.3d 676, 677 n.2 (Mo. App. W.D. 2021) (citation omitted).

[4] Inexplicably, he also testified that his then-girlfriend (now-wife) was alerted to his arrest before his home was searched and "[s]he took and hid everything in the trash and threw a litterbox on top of it" before police arrived. However, D.B. could not "remember exactly what" or how much of anything was hidden by his girlfriend under the cat's litterbox, in the trash. This is one of many contradictions in D.B.'s testimony. D.B. was the only witness at the hearing.

of money while we was [sic] in jail[.]" This included having his brother-in-law and sister-in-law sell a hot tub that D.B. owned, the proceeds of which "they'd come put . . . on my books in jail or make a payment for me."[5] D.B. further testified he was still "highly addicted" to methamphetamine while he was in jail. He testified that, while in jail, "The addiction was still there, just you were in jail, you know, but it would be like, I don't know, taking a few days off, or something, or sleeping in for a few days."

Twenty-five days after being arrested, and notably, after having household items sold to raise money, D.B. was able to post bond and was released from custody, on May 21, 2004. D.B. testified that he began manufacturing methamphetamine again within "a couple of days" after being released from jail. D.B. testified he had to "start getting the chemicals," though he also stated "some of the chemicals were still in the trash" under the cat's litterbox. He explained he was "[c]alling people about the money, the chemicals, and getting ready to try to figure out a way to make a living[.]" He also had to once again acquire kitchenware for the manufacture of methamphetamine as it was either used up in the manufacturing process or confiscated by law enforcement. D.B. testified that he manfuactured methamphetamine in his home using "the same process, just different amounts" and distributed within the same circle of customers.

Six weeks after being released from jail on bond, on July 2, 2004, D.B. was arrested and charged once again with distributing or manufacturing

---

[5] D.B.'s testimony about this hot tub transaction is conflicting, as well. He first testified that he traded the hot tub for methamphetamine precursor chemicals. However, he later testified to the selling of the hot tub by his brother-in-law and sister-in-law for money to use in jail or to make house payments, but then explained that when he sold the hot tub, he "told [his] sister to go meet this guy and give him this. And whatever he gives you, just hang onto it until I get out."

3

methamphetamine in violation of section 195.211, RSMo Cum. Supp. 2003, this time for events occurring after his May 21, 2004 release from jail.

On November 4, 2004, D.B. pleaded guilty to both charges. He was sentenced to five years' imprisonment on the first charge. D.B. was sentenced to eight years' imprisonment on the second charge. D.B. testified that he fully completed his sentences in both cases in 2008 and 2010.

On February 2, 2023, D.B. filed a petition for expungement of his convictions in the trial court. The petition named a number of official entities as defendants, including the Buchanan County Prosecutor's Office and the Missouri State Highway Patrol. On March 20, 2023, the Missouri State Highway Patrol, Criminal Records Repository answered the petition. As an affirmative defense, the Highway Patrol's answer contended that D.B. was not entitled to expungement of both of his felony convictions, because of the lifetime limit of one felony expungement in section 610.140.12.

Although he had named the Highway Patrol as a defendant in his petition, D.B. filed a motion to strike its Answer, claiming that the Highway Patrol did not have standing to challenge D.B.'s petition for expungement. The trial court denied the motion to strike, finding that the Highway Patrol's Criminal Records Repository "has standing to object to an expungment in the trial court . . . because they have an interest in ensuring that the criminal history record information it maintains is complete and accurate."

The Buchanan County Prosecutor's Office was served with D.B.'s expungement petition and a summons on February 17, 2023. It failed to file a

4

timely answer to the petition.  On April 10, 2023, the Prosecutor's Office filed a motion for leave to answer out of time.  The trial court granted the motion.

On May 31, 2023, the trial court held an evidentiary hearing on D.B.'s amended petition for expungement.  D.B. was the only witness.  In addition to the testimony described above concerning the underlying offenses, D.B. testified that "[t]he precursors are used up when you do a batch[,]" meaning "if you're going to start again and do a second batch, you need to go get some chemicals."  He explained that the items used in the manufacturing process "almost have to be replaced every time in my circumstance . . . . After every process, you had to either trade somebody – that was what the whole process was, was trading somebody the finished product for the product to remake it again."  D.B. also testified this included sometimes replacing the cookware.  He further testified that he pled "guilty to manufacturing a controlled substance for two separate incidents," and that he was "manufacturing several batches, if you will, during this timeframe."  D.B. agreed that "each time when [he] made a batch, [he] had a choice . . . to stop making batches or to go out and buy supplies to make a new batch."

At the conclusion of the hearing, the trial court granted the Highway Patrol's motion for directed verdict.[6]  The court ruled that D.B.'s two convictions were not part of the same course of conduct, as reflected in its judgment: "The Court finds these two convictions are not part of the same course of conduct and [D.B.] is not

---

[6] "In a court tried case, a motion for directed verdict at the close of a plaintiff's case is not appropriate and is treated as a motion pursuant to Rule 73.01(b) for 'a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief.'" *Sweeney v. Ashcroft*, 652 S.W.3d 711, 718 n.5 (Mo. App. W.D. 2022) (citing *Radmacher v. Dir. of Revenue*, 405 S.W.3d 607, 609 n.2 (Mo. App. W.D. 2013); *Williams v. Dir. of Revenue*, 335 S.W.3d 70, 72 n.1 (Mo. App. W.D. 2011)).

entitled to an expungement for two felony offenses under [section 610.140]." The trial court also stated in its judgment that it rejected D.B.'s argument that his two convictions were committed as a course of conduct "based upon the evidence presented at trial." Having found that D.B. satisfied the remaining requirements for expungement with respect to his felony convictions, at the conclusion of the hearing the trial court gave D.B. the choice of which conviction he wished to have expunged. D.B. chose expungement of the first conviction, and the trial court entered judgment accordingly. D.B. appeals.

## Standard of Review

"'The standard of review for a bench-tried civil case is that set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).'" *Sweeney v. Ashcroft*, 652 S.W.3d 711, 721 (Mo. App. W.D. 2022) (quoting *Stander v. Szabados*, 407 S.W.3d 73, 78 (Mo. App. W.D. 2013)).[7] "We review the trial court's Judgment to determine if it is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. The trial court's construction and application of statutory requirements is a question of law we review *de novo*." *T.V.N. v. Mo. State Hwy. Patrol Crim. Justice Info. Servs.*, 592 S.W.3d 74, 77 (Mo. App. W.D. 2019) (internal citations omitted).

When interpreting a statute, "the primary rule is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory

---

[7] Here, the judgement is, in every respect, a judgment on the merits under Rule 73.01(b). *See Sweeney*, 652 S.W.3d at 721 n.9.

language." *N.M.C. v. Mo. State Hwy. Patrol Crim. Recs. Repository*, 661 S.W.3d 18, 23 (Mo. App. E.D. 2023) (citation omitted). Only when the language is ambiguous or would lead to an absurd or illogical result do we look beyond the plain meaning of the statute. *Id.*

As to Point IV and the application of section 610.140, "'When the words of the statute are clear, further interpretation is unnecessary, and the Court's analysis consists of applying the plain meaning of the law to the case before it.'" *LaBlance v. Dir. of Revenue*, 658 S.W.3d 505, 511-12 (Mo. banc 2022) (quoting *Bartlett Int'l, Inc. v. Dir. of Revenue*, 487 S.W.3d 470, 473 (Mo. banc 2016)). As recently as last month in a case strikingly similar to the case at hand, this Court stated that when applying section 610.140 we should be guided simply by its plain language. *Smith v. MSHP Crim. Recs. Repository, et al.,* No. ED111779, 2024 WL 2001848, at *2 (Mo. App. E.D. May 7, 2024).

## Points I and III

In his first Point, D.B. argues that the Highway Patrol's Criminal Records Repository lacked standing to contest his petition for expungement. We disagree.

Section 610.140.3 requires that a petition for expungement of criminal convictions

> name as defendants all law enforcement agencies, courts, prosecuting or circuit attorneys, municipal prosecuting attorneys, *central state repositories of criminal records*, or others who the petitioner has reason to believe may possess the records subject to expungement for each of the offenses, violations, and infractions listed in the petition.

(Emphasis added). Under section 43.500(2), the "central repository" is defined as "the division within the Missouri state highway patrol responsible for compiling

and disseminating complete and accurate criminal history records and statistics[.]"

Section 610.123.2, which applies to the expungement of arrest records, similarly requires that a petition for expungement "shall name as defendants all law enforcement agencies, courts, prosecuting attorneys, central state depositories of criminal records or others who the petitioner has reason to believe may possess the records subject to expungement." This Court has recognized that section 610.123.2 "reflects the General Assembly's recognition that the Central Repository is aggrieved by a judgment expunging an arrest." *T.V.N.*, 592 S.W.3d at 78. In a similar vein, this Court has recognized that the Highway Patrol's criminal records repository is an "aggrieved" party with standing to appeal from decisions expunging records of arrest or conviction. *See*, *e.g.*, *N.M.C.*, 661 S.W.3d at 22-23; *Parker v. Swope*, 157 S.W.3d 350, 353 (Mo. App. E.D. 2005). Section 610.140.3's requirement that the central State repository of criminal records be named as a defendant demonstrates that the Highway Patrol's records repository has a legal interest in expungement petitions like D.B.'s.

Consistent with the requirements of section 610.140.3, both D.B.'s original petition, and his amended petition, named the Missouri State Highway Patrol Criminal Justice Information Services Division as a defendant. D.B. cannot plausibly argue that *a defendant he sued* lacks the capacity to defend the action.

In claiming that the Highway Patrol does not have standing to contest his expungement petition, D.B. cites to a sentence in section 610.140.5, which states that, "[i]f the prosecuting attorney, circuit attorney, or municipal prosecuting attorney objects to the petition for expungement, he or she shall do so in writing

within thirty days after receipt of service." Based on this single sentence, D.B. argues that *only* the prosecuting attorney, circuit attorney, or municipal attorney may object to a petition for expungment.

D.B.'s argument focuses on a single sentence in section 610.140.5 in isolation, while ignoring the remainder of the statute. "When determining the legislative intent of a statute," however, "no portion . . . is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." *Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 175 (Mo. App. W.D. 2021) (quoting *Area 5 Pub. Def. Office v. Kellogg*, 610 S.W.3d 383, 388 (Mo. App. W.D. 2020)). As discussed above, section 610.140.3 plainly requires that the central State repository of criminal records be named as a defendant in an expungement petition. Further, in another sentence in section 610.140.5 which D.B. ignores, the statute provides that, "[i]f no objection has been filed within thirty days after receipt of service, the court may set a hearing on the matter and *shall give reasonable notice of the hearing to each entity named in the petition*." (Emphasis added.)

Thus, the General Assembly required that the Highway Patrol's criminal records repository be named as a defendant in an expungement petition brought under section 610.140, and that it be provided with notice of the hearing on the petition. Although the statute may not state in so many words that the Highway Patrol *is entitled to contest* the petition for expungement, that is the only reasonable conclusion given its status as a party-defendant entitled to notice. *Cf. State ex rel. Schmitt v. Harrell*, 633 S.W.3d 463, 467 (Mo. App. W.D. 2021) ("It would make little sense [for the relevant statute] to permit the Attorney General to

appear and participate in the hearing on the Prosecutor's Motion to Set Aside Strickland's convictions, yet deny the Attorney General the right to file motions which relate to the manner in which that hearing will be conducted (*e.g.*, on what schedule, and before what decisionmaker).").  Notably, in multiple expungement cases in this Court, the Highway Patrol has acted as the primary respondent.  *See N.M.C.*, 661 S.W.3d at 20-21 (in responding to an action under section 610.140, the Central Repository sought leave to file a late answer and participated in the expungement hearing without objection); *W.S. v. Jackson Cty. Prosecutor*, 593 S.W.3d 94 (Mo. App. W.D. 2020) (in responding to an action under section 610.140, the Highway Patrol filed an answer, argued against expungement, and produced evidence at the expungement hearing); *R.G. v. Mo. State Hwy. Patrol*, 580 S.W.3d 38 (Mo. App. W.D. 2019) (in responding to an action under section 610.140, the Highway Patrol filed an Answer and Motion to Dismiss and later appealed the expungement).

We deny D.B.'s first Point, which argues that the Highway Patrol lacked standing to contest his expungement petition.  Given this conclusion, it is unnecessary for the Court to address Point III, concerning the Buchanan County Prosecutor's failure to file a timely answer to D.B.'s original petition.  The Highway Patrol and the Prosecutor presented identical arguments; even if the Prosecutor's Office failed to timely make those arguments, those same arguments were timely raised by the Highway Patrol.  Point III is denied as moot.

## Point II

In his second Point, D.B. argues that the trial court improperly considered whether D.B.'s expungement petition violated the lifetime limit on expungements

found in section 610.140.12. According to D.B., because the Prosecutor's Office did not timely object to his petition, the application of the lifetime limit was no longer in issue. We disagree.

D.B.'s second Point depends on his reading of sections 610.140.5 and 610.140.7. Section 610.140.5 provides:

> 5. The clerk of the court shall give notice of the filing of the petition to the office of the prosecuting attorney, circuit attorney, or municipal prosecuting attorney that prosecuted the offenses . . . listed in the petition. If the prosecuting attorney, circuit attorney, or municipal prosecuting attorney objects to the petition for expungement, he or she shall do so in writing within thirty days after receipt of service. Unless otherwise agreed upon by the parties, the court shall hold a hearing within sixty days after any written objection is filed, giving reasonable notice of the hearing to the petitioner. If no objection has been filed within thirty days after receipt of service, the court may set a hearing on the matter and shall give reasonable notice of the hearing to each entity named in the petition. At any hearing, the court may accept evidence and hear testimony on, and may consider, the following criteria for each of the offenses . . . listed in the petition for expungement:
>
> (1) At the time the petition is filed, it has been at least three years if the offense is a felony, or at least one year if the offense is a misdemeanor, municipal offense, or infraction, from the date the petitioner completed any authorized disposition imposed under section 557.011 for each offense . . . listed in the petition;
>
> (2) At the time the petition is filed, the person has not been found guilty of any other misdemeanor or felony, not including violations of the traffic regulations provided under chapters 301, 302, 303, 304, and 307, during the time period specified for the underlying offense . . . in subdivision (1) of this subsection;
>
> (3) The person has satisfied all obligations relating to any such disposition, including the payment of any fines or restitution;
>
> (4) The person does not have charges pending;

11

(5) The petitioner's habits and conduct demonstrate that the petitioner is not a threat to the public safety of the state; and

(6) The expungement is consistent with the public welfare and the interests of justice warrant the expungement.

The first sentence of section 610.140.7 provides that, "[i]f the court determines that [the petitioner] meets all the criteria set forth in subsection 5 of this section for each of the offenses . . . listed in the petition for expungement, the court shall enter an order of expungement."

Relying on these provisions, D.B. argues that, unless the Prosecutor's Office timely objects to the expungement petition, the *only* issues to be decided are those matters listed in sections 610.140.5(1) through (6). D.B. emphasizes that the criteria listed in sections 610.140.5(1) through (6) do *not* include the issue of whether the expungement petition exceeds the lifetime limit on expungements specified in section 610.140.12.

We are unpersuaded. As discussed in Point I, above, when construing a statute we must not read individual provisions in isolation, but must read the entire statute together, and must harmonize its provisions. *Rasmussen*, 628 S.W.3d at 175. At least two significant provisions of section 610.140, outside of sections 610.140.5(1) through (6), place important limitations on a circuit court's authority to expunge a criminal conviction. First, section 610.140.2 lists a large number of offenses which are categorically ineligible for expungement, including class A felonies; dangerous felonies; felonies where death is an element of the offense; and many sex offenses. Second, section 610.140.12 sets a lifetime limit on the expungements that an individual may receive for felonies or misdemeanors. Section 610.140.12 provides in relevant part:

12

12. A person may be granted more than one expungement under this section provided that during his or her lifetime, the total number of offenses . . . for which orders of expungement are granted to the person shall not exceed the following limits:

(1) Not more than two misdemeanor offenses or ordinance violations that have an authorized term of imprisonment; and

(2) Not more than one felony offense.

A person may be granted expungement under this section for any number of infractions.

According to D.B.'s argument, unless the Prosecutor's Office files a timely objection, a person convicted of a crime could obtain an expungement for an offense which is categorically ineligible for expungement under section 610.140.2, and could obtain a greater number of expungements than allowed by section 610.140.12.

D.B.'s argument ignores the overall structure of the statute, and would lead to absurd results. Section 610.140.3 requires that persons other than a prosecuting attorney, circuit attorney, or municipal prosecuting attorney be named as defendants in an expungement petition. Further, as discussed in Point I, above, those other parties are entitled to defend against an expungement petition to the same extent as a prosecuting or circuit attorney. Section 610.140.5 plainly contemplates that a hearing on an expungement petition will be held by the court, and plainly requires that the court determine that the criteria listed in section 610.140.5(1) through (6) be satisfied, *whether or not any prosecuting or circuit attorney has filed a timely objection.* Given that *other parties* are entitled to defend the action, and that the court is required to determine a petitioner's eligibility for an expungement *whether or not* a prosecuting or circuit attorney objects, it makes little sense that the court would not be entitled to consider the

13

*other* eligibility criteria in section 610.140, before deciding whether to grant the petition.

D.B.'s argument also proves too much. He contends that the list of ineligible offenses in section 610.140.2, and the lifetime limits on expungements in section 610.140.12, can *only* be considered if a prosecuting or circuit attorney timely objects to an expungement petition. But sections 610.140.5(1) through (6) list criteria on which evidence shall be heard in *any* hearing on an expungement petition, *whether or not a timely objection is made*. Section 610.140.5 gives the following introduction to the list of criteria to be addressed at an evidentiary hearing: "[a]t *any* hearing, the court may accept evidence and hear testimony on, and may consider, the following criteria . . . ." (Emphasis added). If D.B.'s argument were meritorious, and the listing of criteria in sections 610.140.5(1) through (6) were exhaustive, that listing would be exhaustive in *every* case, whether or not a prosecuting or circuit attorney objected. The list of ineligible offenses, and the lifetime limit on expungements, would become completely inoperative, because they could *never* be considered following the hearing authorized by section 610.140.5. But "[c]ourts may not interpret statutes to render any provision a nullity . . . ." *State v. Knox*, 604 S.W.3d 316, 322 (Mo. banc 2020).

In deciding whether D.B. was entitled to expungement of his convictions, the trial court was required to consider *all* of the statutory eligibility criteria, including the lifetime limit on expungements contained in section 610.140.12. Point II is denied.

**Point IV**

In his fourth and final Point, D.B. argues that the trial court erred in its application of the law when it held that his two offenses were not committed as part of "the same course of criminal conduct."

As discussed in Point II, section 610.140.12(2) provides that an individual can obtain no more than one expungement for a felony offense during that person's lifetime.[8]  Section 610.140.1 creates an exception to the lifetime limit, however.  It provides:

> If the offenses . . . [1] were charged as counts in the same indictment or information or [2] were committed as part of the same course of criminal conduct, the person may include all the related offenses . . . in the petition, regardless of the limits of subsection 12 of this section, and the petition shall only count as a petition for expungement of the highest level violation or offense contained in the petition for the purpose of determining future eligibility for expungement.

Section 610.140.1.

Thus, section 610.140.1 recognizes two exceptions in which multiple offenses may be treated as a single offense for purposes of the lifetime limit on

---

[8] As stated in *Smith*, "expungements serve a remedial purpose."  2024 WL 2001848, at *2 (citation omitted).  And, while we recognize the dissent's snippet from *State ex rel. Curtis v. Crow*, 580 S.W.2d 753, 757 (Mo. banc 1979), stating "the legislature intended broad rather than limited application of an order to expunge entered [under a former expungement statute,]" we further recognize that, as *Curtis* stated in its *next* snippet, this is intended once "the offender meets the prerequisites of the statute . . . ." *Id*.  Further, we must recognize that "[l]iberal construction does not give courts license to extend a statute beyond its *plain* terms."  *Estate of Newman by Eatherton v. City of Leadwood*, 611 S.W.3d 529, 535 n.9 (Mo. App. E.D. 2020) (alteration in original) (emphasis added) (applying worker's compensation statute).  Thus, we must apply the plain language (or terms) of the statute, and do not extend section 610.140.1 past its plain meaning.

15

expungements: (1) where the offenses are included in a single charging instrument, *or* (2) when the offenses are part of the same course of criminal conduct. Only the latter circumstance is at issue here.

In its judgment, the trial court clearly found that D.B.'s two convictions were *not* part of the same course of conduct under section 610.140:

> [D.B.] requests expungement on both convictions under a theory that both were committed as a course of conduct. The Court rejects that argument based upon the evidence presented in trial. The Court sustains Defendant Missouri State Highway Patrol's Motion for Directed Verdict at the close of [D.B.'s] evidence on this issue and finds only one felony conviction shall be considered for expungement.

In accordance with this finding, the court then ordered that:

> Defendant Highway Patrol's Motion for Directed Verdict as to [D.B.'s] request to have two felony convictions expunged is sustained. The Court finds these two convictions are not part of the same course of conduct and [D.B.] is not entitled to an expungement for two felony offenses under [section 610.140].

The trial court did not erroneously apply the law in so holding.

As previously recognized by Missouri courts, the phrase same "course of criminal conduct" is not defined by section 610.140. *N.M.C.*, 661 S.W.3d at 25; *Smith*, 2024 WL 2001848, at *2. Nevertheless, the plain language of section 610.140 suffices in resolving the question at hand: "The expungement statute asks whether multiple offenses were committed as a result of the same course of conduct, thereby warranting expungement of all offenses. This determination should be guided by the plain language of [section] 610.140." *Smith*, 2024 WL

2001848, at *2 (citing *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)).[9]

The plain meaning of the phrase "same course of criminal conduct" is clear, and not difficult to ascribe. As stated above, "'[w]hen the words of the statute are clear, further interpretation is unnecessary, and the Court's analysis consists of applying the plain meaning of the law to the case before it.'" *LaBlance*, 658 S.W.3d at 511-12 (quoting *Bartlett Int'l, Inc.*, 487 S.W.3d at 473). Thus, our task is to simply apply the plain meaning of the phrase to determine whether D.B.'s actions were part of the "same course of criminal conduct."

---

[9] And, conversely, by applying the plain meaning of the statute, *Smith* states *sub silentio* that there is no ambiguity in the phrase itself. Indeed, when "the everyday meanings of these words [are] so plain and clear, a definition is not necessary to avoid ambiguity." *City of Univ. City v. AT & T Wireless Servs.*, 371 S.W.3d 14, 20 (Mo. App. E.D. 2012) (citation omitted) ("use or rental fee" is plain and clear). The dissent seizes upon an acknowledgement of ambiguity by the State during oral argument. However, answers during oral argument can often be guided by the manner in which a question is posed to counsel from the bench. Further, not only do we not allow parties to somehow stipulate to what the law *should be* for their case, we note that *neither party claimed ambiguity in their briefing*, and *D.B. actually applied the plain meaning of the phrase in his brief*.

This is the third case to directly address the phrase "same course of criminal conduct" within section 610.140.1, the first two being *N.M.C.* and *Smith*. While *N.M.C.* found a double jeopardy analysis "helpful," it clearly relied on the plain language of the statute in finding that the offenses at issue were not part of the same course of criminal conduct. 661 S.W.3d at 24-25. *Smith* narrowed *N.M.C.*, cautioning against the use of the double jeopardy analysis and explicitly stating that the determination of whether multiple offenses were committed as part of the same course of criminal conduct "should be guided by the plain language of [section] 610.140." 2024 WL 2001848, at *2 (citation omitted). We agree with the cautionary language of *Smith*, and follow suit here by applying the plain language of section 610.140.1. The dissent clearly disfavors this analysis and ignores Missouri courts' precedent in applying the plain language reading of section 610.140, which is evident in *Smith*.

Here, the subject of the phrase is "course," a noun modified by the prepositional phrase, "of criminal conduct." It is thus plain that the course taken by D.B. must be one of criminal conduct, and not non-criminal conduct. "Course" is further modified by the adjective, "same."[10] Thus, the course taken by D.B. must be the same course, not one of two or more courses between which events of non-criminal conduct occurred. Accordingly, efforts to "tie" or "string" two courses of conduct together with the use of *non-criminal* conduct in order to create one, *same*

---

[10] The dissent excises the word, "same," from the key phrase, thereby eliminating a key modifier of "course" altogether. Rather than addressing the plain meaning of the phrase "same course of criminal conduct," the dissent eloquently hones in on various similar – but not the same – phrases, all of which are used in different contexts in other statutory schemes. (Dissent at 4-9). In doing so, the dissent simply orbits around the statutory language, "same course of criminal conduct," without ever landing on the phrase in its entirety. *None* of the authority the dissent cites addresses the exact language we have here. The critical difference between the phrase "same course of criminal conduct" and the many iterations the dissent mentions is the modification of the subject "course" by the terms "same" and "of criminal conduct," as discussed *supra*. We therefore question why the dissent chooses to review a series of "almosts" rather than look at the plain meaning of the statute's language, particularly in light of the clear precedent set forth in *Smith*.

By way of example, the dissent refers the reader to *State v. Snider*, 869 S.W.2d 188, 196 (Mo. App. E.D. 1993), stating, "This Court held that 'the statute [now-repealed section 570.050] does not require that the thefts be motivated by the same criminal impulse' to constitute 'one scheme or course of conduct.'" (Dissent at 5). Yet, the legislature's language in now-repealed section 570.050 stated, "Amounts stolen pursuant to one scheme or course of conduct, whether from the same or several owners and whether at the same or different times, constitutes a single criminal episode and may be aggregated in determining the grade of the offense." *Snider*, 869 S.W.2d at 196 (emphasis removed) (quoting section 570.050 RSMo 1986). It is significant that section 570.050 explicitly states time is not an issue for its purposes. It thus makes sense why, under *that* repealed language, thefts taking place over a course of two years could still be considered "one scheme or course of conduct," but cannot be the case here since section 610.140 addresses the "same course of criminal conduct." Further, the phrase "*same* course of *criminal* conduct" is not in that statute at all. Notably, *the legislature could have written the expungement statute as broadly as the now-repealed section 570.050, but did not do so.*

18

course of *criminal* conduct, must fail, as it does nothing more than corrupt the plain meaning of the statutory language.[11] Thus, the question is: was this the same course of criminal conduct, or was this two or more courses of conduct tied or strung together by non-criminal conduct?

This was explained in *Smith*, in stating that when analyzing whether a defendant's offenses constitute the same course of criminal conduct, we must focus "on the defendant's actions leading up to the charges." *Smith*, 2024 WL 2001848, at *3. There, Smith sought "expungement of multiple felony offenses from two criminal convictions in St. Louis County." *Id.* at *1. Like D.B., Smith asserted the

---

[11] Moreover, when section 610.140.1 is "read in the context of the subsection within which it appears[,]" *T.V.N.*, 592 S.W.3d at 82 (citing *BASF Corp. v. Dir. of Revenue*, 392 S.W.3d 438, 444 (Mo. banc 2012)), the plain meaning of the "same course of criminal conduct" exception is not only clear, but easily harmonized with the "same indictment or information" exception; the *other* exception found in section 610.140.1. *See BASF Corp.*, 392 S.W.3d at 444 ("When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." (citation omitted)). By way of example as to the interplay between the two exceptions in section 610.140.1, consider a day-long, multi-circuit crime spree, the result being informations or indictments filed in multiple judicial circuits. While the offenses could not be charged in the "same indictment or information," such a crime spree could render the offenses part of the "same course of criminal conduct." Accordingly, the collective offenses of such crime spree could be considered for expungement as part of the "same course of criminal conduct" even though they could not be filed in the "same indictment or information." Such a situation harmonizes section 610.140.1's two exceptions and gives understandable meaning as to why the legislature provided both.

The dissent attempts to undermine our example by pointing to statements made by State's counsel at oral argument "that she had handled multiple cases involving this scenario, and that in each one the circuit court's [sic] had refused to expunge the separate convictions." (Dissent at 19-20). Of course, we have no knowledge of the facts of State counsel's anecdotal statements. Nevertheless, the dissent's reference to oral argument actually bolsters our position, as it demonstrates circuit courts are mindful of the "*same course of criminal conduct.*"

two convictions were part of the same course of criminal conduct, "all of the offenses [having] stemmed from his illegal conduct on two occasions ten days apart at properties owned by the Parkway School District." *Id.* at *3. Similarly to D.B., Smith sought to tie the two offenses together through testimony "that due to the medication he was taking, he was unable to sleep for long periods of time and the events felt as if they occurred on the same day[,]" and by stating "he had the same attorney for both cases, pleaded guilty on the same day, and received a global resolution to both cases." *Id.*

Our Eastern District held that Smith "failed to demonstrate his actions 'were committed as part of the same course of *criminal* conduct.'" *Id.* (citing section 610.140.1). In so holding, the court explained "[t]he analysis of whether a defendant's offenses constitute a course of criminal conduct focuses on the defendant's actions leading up to the charges." *Id.* In other words, did those actions evidence the defendant took the *same* course of *criminal* conduct, or conversely, did the wrongdoer's actions evidence intervening non-criminal conduct making defendant's criminal acts not part of the same course. Notably, the Eastern District reached its holding without engaging in statutory construction, having instead found that the "determination should be guided by the plain language of [section] 610.140." *Id.* at *2 (citing *Parktown Imports, Inc.*, 278 S.W.3d at 672).

Likewise here, it is evident from the plain reading of the statute that D.B.'s offenses were not part of the same course of criminal conduct. Viewing the facts

and reasonable inferences in a light most favorable to the judgment, the record first demonstrates that, like the defendant's in *Smith*, non-criminal conduct – his twenty-five day incarceration – occurred between the course taken by D.B. which led to his first offense and that of his second offense, thus leaving his two events of criminal conduct wholly separated by non-criminal conduct. Indeed, the acts underlying D.B.'s two offenses occurred more than two months apart, with D.B.'s jail time in the interim. As a result of this discontinuance in D.B.'s course of criminal conduct, the two offenses cannot be part of the *same* course of criminal conduct.

Undaunted, to account for the interruption between his two courses of criminal conduct, D.B. attempts to bridge the time gap and tie the two offenses together by arguing he was still "highly addicted" and continuing his drug operation while in jail, specifically by receiving income and trading and selling items through outside sources. But D.B.'s argument is inherently flawed for two reasons.

First, in making this argument, D.B. is implicitly acknowledging that a gap of this sort between the two offenses *is fatal* to his claim that his offenses were part of the "same course of criminal conduct." By attempting to bridge the gap and connect his two offenses, D.B. tacitly confesses his belief that the months between his criminal acts actually do preclude his offenses from being part of the same course of criminal conduct. This is particularly noteworthy, given the defendant in *Smith* made a similar attempt to whittle down the ten days between his two acts

21

of illegal conduct by explaining the events felt as if they occurred *on the same day*. The Eastern District was unpersuaded by such arguments, as we are here.  Indeed, it is telling that two defendants making identical claims *both attempt to eliminate* the gap between different courses of criminal conduct in order to support their claims of "same course of criminal conduct."

Second, as the defendant in *Smith* attempted to do, D.B. testified that, while in jail, "The addiction was still there, just you were in jail, you know, but it would be like, I don't know, taking a few days off, or something, or sleeping in for a few days."  In short, D.B.'s argument relies on *non-criminal* acts in order to prove his offenses were part of the "same course of *criminal* conduct."  This cannot be the case.  Neither D.B.'s incarceration nor his alleged addiction to drugs, by itself, is criminal conduct.  And, while D.B. testified he was trying to collect debts and sell personal property in order to continue his drug operation, the trial court was free to disbelieve D.B.'s testimony, and it clearly did, as evidenced by its judgment.[12] "[I]t is well settled that the trial court is free to believe or disbelieve all, part or

---

[12] It comes as no surprise the trial court discounted D.B.'s self-serving testimony. A review of the transcript provides countless instances of his conflicting testimony.  For instance, at one point, in an effort to tie the two courses of criminal conduct together, D.B. stated he tried to collect old debts while in jail to continue his drug operation.  Yet, at another point, he stated he was trying to collect debts and was selling his household items in order to pay living expenses, make his house payments, have money on his "books in jail," and otherwise provide for his family.  Also of note, D.B. ultimately bonded out of jail, providing yet another reason he was trying to raise money.  "We defer to the circuit court's credibility determinations and consider the evidence in the light most favorable to the circuit court's judgment."  *G.E.G.*, 620 S.W.3d at 678 (citation omitted).  And, because factual findings were not requested here, we are required to "presume the trial court found all facts in accordance with its ruling."  *State v. Selvy*, 462 S.W.3d 756, 764 (Mo. App. E.D. 2015) (citation omitted).

none of the evidence, including disbelieving evidence that is uncontroverted.[]"
*Exch. Bank of Mo. v. Gerlt*, 367 S.W.3d 132, 136 (Mo. App. W.D. 2012) (quoting *Simpson v. Simpson*, 295 S.W.3d 199, 204 (Mo. App. W.D. 2009)) (other citation omitted).

In short, two offenses, separated in time and alleged to be connected only through non-criminal acts, cannot be part of the "same course of criminal conduct." In its judgment, the trial court clearly and unmistakebly held that "based upon the evidence presented at trial," D.B.'s "two convictions are not part of the same course of conduct."[13] Viewing the evidence in the light most favorable to the judgment, and presuming the trial court found all facts in accordance with said judgment, it is clear from the evidence presented that the trial court could have

---

[13] The dissent asserts the trial court's clear pronouncements in the judgment are somehow ambiguous. Ignoring the "plain language reading" precedent, the dissent seeks to bootstrap its analysis of *similar – but not the same* – phrases to find the phrase, "same course of criminal conduct," ambiguous, in order to declare that the trial court's use of this plain language renders the judgment itself ambiguous. Specifically, the dissent conclusively asserts "the circuit court's judgment is itself ambiguous" because it found D.B.'s convictions were not part of the same course of conduct "without further explanation." (Dissent at 14). However, the trial court need not explain itself, especially when no findings of fact or conclusions of law were requested by the parties, as is the case here. As can be seen, *nothing* in the judgment's quoted language *supra* is ambiguous. The dissent declares ambiguity in the plain language of the trial court's judgment in an apparent effort to "get to," and utilize, the court's oral statements at the hearing, where the court improvidently "walked itself" through D.B.'s testimony on the record before ruling on the matter. But "[t]his Court only reviews a circuit court's final judgment" when the judgment is clear. *Smith*, 2024 WL 2001848, at *2 (citations omitted). "'[W]here the language of the judgment is plain and unambiguous, we do not look outside the four corners of the judgment for its interpretation.'" *Howe v. Heartland Midwest, LLC*, 604 S.W.3d 774, 780 (Mo. App. W.D. 2020) (alteration in original) (quoting *Lombardo v. Lombardo*, 120 S.W.3d 232, 244 (Mo. App. W.D. 2003)). Here, the trial court's judgment could not have been more clear in the finding and ruling in question.

found that D.B.'s offenses were not part of the "same course of criminal conduct," as the plain meaning of that language entails in section 610.140.1. As such, D.B. has not demonstrated that the trial court erroneously applied the law.

Point IV is denied. D.B.'s two offenses of manufacturing or distribution of a controlled substance were not "committed as part of the same course of criminal conduct" within the meaning of section 610.140.1. Accordingly, D.B. was not entitled to expungement of both convictions based on the lifetime limit in section 610.140.12(2).

## Conclusion

The judgment of the trial court is affirmed.

_____
W. Douglas Thomson, Judge


Fischer, Sp. J. concurs in majority opinion
Ahuja, J. dissents in separate dissenting opinion

24



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

D.B.,         )
           )
  Appellant,       )
           )
  v.          )     WD86542
           )
MISSOURI STATE HIGHWAY   )     Filed:  July 9, 2024
PATROL CRIMINAL JUSTICE   )
INFORMATION SERVICES,    )
BUCHANAN COUNTY     )
PROSECUTING ATTORNEY(S),   )
CIRCUIT ATTORNEY(S),    )
           )
  Respondents.      )

## DISSENTING OPINION

I respectfully dissent.

A Missouri statute permits an offender to obtain expungement of more than one felony conviction *if* multiple felonies were "committed as part of the same course of criminal conduct." § 610.140.1.

The critical statutory phrase ("the same course of criminal conduct") is not itself defined in § 610.140. [1]  Both D.B. and the State have acknowledged that the phrase is subject to multiple possible constructions – in other words, it is ambiguous.

---

[1]    Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2023 Cumulative Supplement.

Supreme Court precedent requires us to interpret § 610.140 liberally, because it is a remedial statute. Applying the liberal construction mandated by the Supreme Court, "the same course of criminal conduct" must be interpreted to refer to a pattern of criminal offenses committed in a similar manner, even though the offenses in the series are separated in time and can be separately prosecuted. Under that reading, D.B. was entitled to expungement of both of his convictions for manufacturing methamphetamine, because his offenses were committed close in time, and were committed in the same way: the offenses had precisely the same objective, and occurred at the same location, using the same processes, chemical suppliers, and distribution network. At a minimum, the case should be remanded to the circuit court for further consideration, because the record clearly reflects that the court applied an erroneous interpretation to the operative statutory language.

Even though both parties acknowledge that the relevant statutory language is ambiguous, the majority affirms the circuit court's refusal to expunge both of D.B.'s convictions, based on "the plain meaning of the statutory language." Although the majority purports to apply the statute's "plain meaning," it does not follow the normal path for a "plain meaning" analysis: looking to the dictionary definition of the relevant language. Reference to the dictionary – as required by binding Supreme Court precedent – supports the reading of "the same course of criminal conduct" I have proposed.

Rather than applying a traditional statutory construction analysis, the majority seizes on the fact that D.B.'s two offenses were interrupted by "non-criminal conduct." The majority offers no justification for requiring that a

2

"course of criminal conduct" be continuous, and uninterrupted by non-criminal behavior. Such a restriction does not appear in § 610.140.1 itself, and it is hard to imagine a "course of criminal conduct" which would not be interrupted by non-criminal activity of some sort. The majority's analysis fails to apply the liberal construction which § 610.140 deserves. It is regrettable that the majority applies such a narrow reading to a statute which was obviously intended to give individuals with a criminal history the opportunity for a fresh start.

## Discussion

## I.

I begin with a task the majority opinion studiously avoids: construing the statutory language at the heart of the parties' dispute, using well-established canons of statutory construction.

As the majority opinion explains, § 610.140.12 sets lifetime limits on the number of expungements an individual may receive for felonies or misdemeanors. As relevant here, § 610.140.12(2) provides that an offender may obtain expungement of "[n]ot more than one felony offense." Section 610.140.1 qualifies the lifetime limits expressed in § 610.140.12(2). It provides:

> If the offenses . . . [1] were charged as counts in the same indictment or information or [2] were committed as part of the same course of criminal conduct, the person may include all the related offenses . . . in the petition, regardless of the limits of subsection 12 of this section, and the petition shall only count as a petition for expungement of the highest level violation or offense contained in the petition for the purpose of determining future eligibility for expungement.

Thus, multiple offenses may be treated as a single offense for purposes of the lifetime limits found in § 610.140.12(2), *if* (1) the offenses were included in a

3

single charging instrument, _or_ (2) the offenses "were committed as part of the same course of criminal conduct."  Only the second exception is at issue here:  the question presented is whether D.B.'s two felony convictions "were committed as part of the same course of criminal conduct."

## A.

Despite the majority's confident assertion that "[t]he plain meaning of the phrase 'same course of criminal conduct' is clear," the term is clearly ambiguous.

"[T]he same course of criminal conduct" is not defined in the expungement statute itself.  Both parties have acknowledged that "the same course of criminal conduct" is subject to multiple potential meanings.  Thus, in his brief, D.B. argues that he is entitled to prevail _either_ (1) under the definition of a "course of conduct" found in § 565.002(4); _or_ (2) under the dictionary definitions of the relevant terms; _or_ (3) under the definition of a "continuing course of conduct" developed in caselaw applying Double Jeopardy principles.  For its part, counsel for the State stated at oral argument that "I have no problem admitting the language itself is ambiguous, and that we have to look to other sources" to define the phrase.  The State argues that we should interpret "the same course of criminal conduct" consistently with Double Jeopardy caselaw.

Legal authority establishes that "the same course of criminal conduct" is indeed ambiguous, as the parties acknowledge.  For example, as D.B. points out, "course of conduct" is defined for purposes of chapter 565 of the Revised Statutes as "a pattern of conduct composed of two or more acts . . . over a period of time, however short, evidencing a continuity of purpose."  § 565.002(4).  A similar definition has been used to define a "course of conduct" under the Adult Abuse

4

Act.  *See Towell v. Steger*, 154 S.W.3d 471, 473 (Mo. App. S.D. 2005) (citing

*Wallace v. Van Pelt*, 969 S.W.2d 380, 384 (Mo. App. W.D. 1998)).  The same

definition has been applied as a matter of general contract law.  *See*, *e.g.*, *Lincoln*

*Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 687 (6th Cir. 2000)

(Ohio law).

In a separate context, this Court previously interpreted a "course of

[criminal] conduct" to mean a series of offenses which are performed in a similar

manner.  A since-repealed Missouri statute permitted "[a]mounts stolen

pursuant to one scheme or course of conduct" to be aggregated to determine the

classification of a stealing conviction.  § 570.050, RSMo 2000.  This Court held

that "the statute does not require that the thefts be motivated by the same

criminal impulse" to constitute "one scheme or course of conduct."  *State v.*

*Snider*, 869 S.W.2d 188, 196 (Mo. App. E.D. 1993).  "Instead, these phrases refer

to a series of (stealing) acts *bearing similarities in the manner in which they are*

*performed*."  *Id*. (emphasis added).  *Snider* specifically noted that "the term 'one

scheme or course of conduct,' within the context of the aggregation statute cannot

imply double jeopardy 'sameness,'" because if it did, the various stealing offenses

could <u>only</u> be charged as a single crime.  *Id*.

Notably, *Snider* held that a restaurant employee's repeated theft of

customer payments over a <u>two-year</u> time period constituted part of "one scheme

or course of conduct."  *Id*. at 197-98.  The Court reached this result even though it

acknowledged that "[i]t would strain common sense to say that [the defendant's]

course of conduct, involving thefts occurring over two years motivated by

separate criminal impulses, was 'uninterrupted.'"  *Id*. at 197.  Under *Snider*, a

5

series of separate crimes occurring over a multi-year period can constitute "one . . . course of conduct," even if that "course of conduct" is interrupted.

Like *Snider*, federal caselaw has defined "the same course of [criminal] conduct" to refer to an "identifiable pattern of criminal conduct," where a defendant "repeats the same type of criminal activity over time."  The United States Sentencing Guidelines provide that a federal court may consider uncharged offenses when determining a criminal sentence, if the uncharged offenses were "part of the same course of conduct . . . as the offense of conviction."  § 1B1.3(a)(2).  The Guidelines' official Commentary explains that offenses will be considered part of the "same course of conduct"

> if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.  Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.  When one of the above factors is absent, a stronger presence of at least one of the other factors is required.  For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity.

U.S. SENTENCING GUIDELINES § 1B1.3, comment 5(B)(ii).  As one federal appellate court has explained,

> In defining "same course of conduct" under U.S.S.G. § 1B1.3(a)(2), we have concluded that similarity, regularity, and temporal proximity are the significant elements to be evaluated.  The term looks to whether the defendant repeats the same type of criminal activity over time.  It does not require that acts be connected together by common participants or by an overall scheme. It focuses instead on whether defendant has engaged in an

6

identifiable behavior pattern of specified criminal activity. Further, a change in the operation's *modus operandi* need not affect the same course of conduct inquiry when the defendant's continued involvement in the specified type of criminal activity remains evident.

*United States v. Hamilton*, 587 F.3d 1199, 1221 (10th Cir. 2009) (cleaned up); *see also, e.g., United States v. Ortiz*, 613 F.3d 550, 557-58 (5th Cir. 2010); *United States v. Shonubi*, 998 F.2d 84, 89 (2d Cir. 1993).

In applying the Sentencing Guidelines, federal courts have found sufficient "temporal proximity" between charged and uncharged offenses so long as the offenses were committed *within a year* of one another.[2] Federal courts have found a single "course of [criminal] conduct" where the defendant's crimes spanned multiple months, or even years.[3]

As a final example of the varying definitions of a "course of criminal conduct," the phrase "continuing course of conduct" is employed in Double Jeopardy analysis, to determine whether a defendant may be charged with only one offense, or instead with multiple offenses, when the defendant engages in similar or related conduct over time. As explained in *N.M.C. v. Missouri State*

---

[2] *See, e.g., United States v. Schultz*, 88 F.4th 1141, 1144 (5th Cir. 2023) ("[t]he benchmark for temporal proximity is generally one year"; citation omitted); *United States v. Sullivan*, 414 F. App'x 477, 480 (3d Cir. 2011) ("As to the temporal factor, '[a]s a general principle, various courts have found that a period of separation of over one year negated or weighed against a finding of temporal proximity.'" (citation omitted)).

[3] *See, e.g., Hamilton*, 587 F.3d at 1220-22 & n.10 (wholesale drug purchases conducted "at least twice a month over a period of approximately ten months"); *United States v. Roederer*, 11 F.3d 973, 980 (10th Cir. 1993) (distribution of quantities of cocaine to separate individuals, in separate transactions, between "September/October 1987" and "mid to late April, 1992"); *Shonubi*, 998 F.2d at 89 ("That Shonubi's [international] travel [to acquire heroin in Nigeria] took place over a period of 15 months is no bar to finding that the trafficking was part of the same course of conduct.").

*Highway Patrol Criminal Records Repository*, 661 S.W.3d 18 (Mo. App. E.D. 2023),

> In a double jeopardy analysis of whether a defendant's conviction and sentencing for multiple actions comprise a continuing course of conduct, the Missouri legislature has prohibited prosecution of more than one offense for the same act if the offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted. Missouri courts have found separate offenses when the actions are separated in time. An offense is separated in time when the defendant has the opportunity to reconsider his or her actions. In addition, when offenses are based on different acts or a separate mental state is formed for each act, crimes are different in nature.

*Id*. at 25 (cleaned up).

## B.

As explained in § I.A above, the parties agree that "the same course of criminal conduct" is susceptible to multiple possible constructions, and the caselaw bears that out. The question then becomes: which of these multiple definitions should we apply to the phrase when used in § 610.140.1?

In choosing among the various possible definitions of "the same course of criminal conduct," the decisive factor is that § 610.140 is a remedial statute, entitled to a liberal construction:

> "Remedial statutes, such as expungement of arrest records under § 610.122, should be liberally construed." "Furthermore, the Supreme Court of Missouri has stated remedial statutes should be liberally construed to promote their beneficial purpose." "When there is ambiguity in a remedial statute, we will construe it in a manner that is consistent with the spirit of the law, resolving all reasonable doubts in favor of applicability of the statute to the particular case."

*B.K. v. Mo. State Hwy. Patrol*, 561 S.W.3d 876, 879 (Mo. App. W.D. 2018) (quoting *Doe v. St. Louis Cnty. Police Dep't*, 505 S.W.3d 450, 455 (Mo. App. E.D. 2016)); *see also, e.g.*, *Doe v. Mo. State Hwy. Patrol Crim. Records Repository*, 474 S.W.3d 171, 176 (Mo. App. E.D. 2015).  The liberal-construction principle stems from the Missouri Supreme Court's decision in *State ex rel. Curtis v. Crow*, 580 S.W.2d 753 (Mo. 1979), which held that an earlier statute governing expungement of criminal convictions, § 195.290, RSMo Supp. 1975, was "remedial in nature," and that "the legislature intended broad rather than limited application of an order to expunge entered thereunder."  580 S.W.2d at 756-57.

Applying a liberal construction to § 610.140.1, "the same course of criminal conduct" must be interpreted to mean a pattern of similar criminal conduct, in which an offender repeats the same type of criminal acts over time.  Notably, federal courts have adopted a similar definition in interpreting the United States Sentencing Guidelines, even though the Sentencing Guidelines must be *strictly construed*[4] – precisely the *opposite* of the *liberal construction* we are required to apply to Missouri's expungement statutes.  If "the same course of criminal conduct" can be *strictly construed* to apply to a series of similar offenses committed over an extended period, I cannot understand how a similarly broad definition is not appropriate under the principle of *liberal* construction which governs here.

This interpretation of "the same course of criminal conduct" is informed, and confirmed, by the *other* exception to the lifetime expungement limit in § 610.140.1:  for offenses which "were charged as counts in the same indictment

---

[4]     *See United States v. Parker*, 762 F.3d 801, 806-07 (8th Cir. 2014); *United States v. Ramirez*, 347 F.3d 792, 799-800 (9th Cir. 2003).

9

or information." *See Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 122 (Mo. 2014) (recognizing "the principle of statutory construction known as *noscitur a sociis* – a word is known by the company it keeps").

Separate offenses may be "charged as counts in the same indictment or information" in a wide variety of circumstances. Under Rule 23.05,

> [a]ll offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

*See also* § 545.140.2. "Liberal joinder of criminal offenses is favored." *State v. McKinney*, 314 S.W.3d 339, 341 (Mo. 2010). Offenses may be "connected" in "a number of ways": "by time, by similarities in the manner they were committed, by motive, and 'by their dependence and relationship to one another.'" *Id.* (quoting *State v. Morrow*, 968 S.W.2d 100, 109 (Mo. 1998)).

> The use of similar or comparable tactics is sufficient to show that the offenses are of the same or similar character for purposes of joinder. "[T]he manner in which the crimes were committed, or the connection otherwise between the offenses, must be so similar or so related that the manner or the relationship is pertinent evidence that the same person committed all the charged offenses." The tactics need only resemble or correspond with one another; they do not need to be identical. Nonexclusive factors that show similar tactics include commission of the same type of offenses, victims of the same sex and age group, offenses at the same location, and offenses closely related in time.

*State v. Dodd*, 637 S.W.3d 659, 670 (Mo. App. W.D. 2021) (quoting *State v. Holliday*, 231 S.W.3d 287, 293 (Mo. App. W.D. 2007)).

Offenses of the same or similar character can be "charged as counts in the same indictment or information." Likewise, offenses of the same or similar

10

character can constitute part of "the same course of criminal conduct." Section 610.140.1's two exceptions reflect similar legislative intentions; they are "of a piece," and should be interpreted in similar fashion.

In *N.M.C. v. Missouri State Highway Patrol Criminal Records Repository*, 661 S.W.3d 18 (Mo. App. E.D. 2023), the Eastern District recently held that the definition of a "continuing course of conduct" in Double Jeopardy analysis was "helpful" to the interpretation of § 610.140.1. *Id.* at 25. I disagree, for multiple reasons. First, *N.M.C.* fails to recognize that "the same course of criminal conduct" may be susceptible to multiple reasonable meanings; *N.M.C.* also fails to acknowledge the rule of liberal construction we are required to apply in this context. As a result, the definition of "the same course of criminal conduct" which *N.M.C.* adopted may be the *most restrictive* among several reasonable definitions of the phrase.

Second, the Double Jeopardy analysis adopted in *N.M.C.* addresses a different question than the one presented here. Double Jeopardy analysis asks whether multiple separate acts can be charged as multiple offenses, or must instead be considered a single crime. Because it seeks to determine whether a defendant committed only one, or instead multiple, offenses, Double Jeopardy analysis focuses on whether a "course of conduct" was "*continuing*" – meaning, uninterrupted. If multiple acts constitute part of a "*continuing* course of conduct," then those acts constitute a single offense, and only one conviction can lawfully be entered.

Unlike in Double Jeopardy analysis, § 610.140.1 does not require that a "course of criminal conduct" be "*continuing*," and the statute plainly

11

contemplates that a person seeking expungement was properly convicted of multiple separate offenses. If we were to apply the Double Jeopardy definition of a "*continuing* course of conduct" to § 610.140.1, the exception for multiple offenses "committed as part of the same course of criminal conduct" would only apply where the multiple convictions *were themselves unconstitutional*, in violation of the offender's Double Jeopardy rights. I cannot accept that the legislature intended such a narrow reading for "the same course of criminal conduct," particularly where it did not require that a "course of criminal conduct" be "*continuing.*" *See, e.g.*, *State ex rel. Bailey v. Fulton*, 659 S.W.3d 909, 913 n.3 (Mo. 2023) (rejecting argument which would require the Court "to add words to the statute, which this Court cannot do under the guise of statutory interpretation" (citation omitted)). Thankfully, the Eastern District's more recent decision in *Smith v. MSHP Criminal Records Repository*, No. ED111779, 2024 WL 2001848 (Mo. App. E.D. May 7, 2024), backs away from *N.M.C.*'s Double-Jeopardy-based analysis, "caution[ing] against a strict adherence to double jeopardy concepts in the expungement analysis." *Id.* at *2.

## C.

When § 610.140.1 is properly interpreted, D.B. is plainly entitled to expungement of both of his convictions for manufacturing methamphetamine. D.B.'s two offenses are plainly of a similar nature. First, and most obviously, D.B.'s two convictions are for *the same crime*, having a single objective: the production of methamphetamine. Moreover, D.B.'s two offenses were committed in the space of a few months, in the same location, using the same manufacturing process, the same chemical suppliers, and the same distribution network.

12

The circuit court rejected D.B.'s claim that he was entitled to expungement of both of his convictions based on an erroneous reading of the statute. The circuit court's judgment simply parrots the words of § 610.140.1: it states that D.B.'s "two convictions are not part of the same course of conduct," without further explanation. By simply paraphrasing ambiguous statutory language, the circuit court's judgment is itself ambiguous. There is no way of knowing, from the face of judgment, how the circuit court interpreted the relevant statutory language.

"[A]n appellate court may consider oral comments made by the trial court to aid in interpreting an ambiguous judgment." *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 826 (Mo. App. W.D. 2012) (*en banc*). Here, the circuit court's statements at the conclusion of the evidentiary hearing make clear how the court interpreted "the same course of criminal conduct." Thus, the court stated that "a course of conduct is . . . clear to me in that something is charged in the same information." The circuit court found that D.B. was "still in this business while he's in jail," and that the offenses were "continuing because of [D.B.'s] mental state that was [not] reformed after he got out of jail to continue to do this kind of behavior." Although it found that D.B.'s methamphetamine manufacturing operation was not interrupted during his initial detention, the court nonetheless concluded that D.B.'s convictions did not arise from "the same course of criminal conduct" because the convictions did not arise from a single charging instrument, and because D.B. "had a different mental state for both acts that [he was] convicted of in this case. And they were separated in time, regardless of how little

13

the time was." The court also relied on the fact that D.B. was given different sentences for the two offenses.

The circuit court applied an erroneous interpretation to § 610.140.1. Section 610.140.1 plainly recognizes *two separate circumstances* in which multiple offenses may be treated as a single offense: (1) where the offenses are charged together in a single indictment or information; *or* (2) when the offenses are "part of the same course of criminal conduct." The circuit court's belief that "a course of conduct [exists only when] . . . something is charged in the same information" improperly conflates two *separate* exceptions to the lifetime expungement limit. Further, the fact that D.B. had a different mental state for each offense, that the offenses occurred at different times, and that he received separate sentences, simply establishes that he committed *two offenses*. Those facts do nothing to support the circuit court's conclusion that D.B.'s two offenses were not part of "the same course of criminal conduct." To the extent the circuit court applied the Double Jeopardy analysis adopted in *N.M.C.*, that analysis is wrong for the reasons explained in § I.B above. Even if D.B. were not entitled to outright reversal, given the circuit court's application of an erroneous legal standard, at a minimum the case should be remanded to the circuit court for reconsideration.

## II.

Rather than acknowledging that "the same course of criminal conduct" is subject to multiple reasonable constructions – as both parties concede – the majority opinion blithely proclaims that "the plain language of section 610.140 suffices in resolving the question at hand." The majority does not acknowledge

14

the multiple possible constructions of the phrase which are supported by caselaw and by other statutes, even though the various potential definitions would lead to dramatically different results in this case. Instead – and without actually explaining what meaning it ascribes to a "course of criminal conduct" – the majority states that the *same* "course" must not be "two or more courses," and that multiple acts cannot be a single course if "between [them] events of non-criminal conduct occurred":

> [T]he course taken by D.B. must be the same course, not one of two or more courses between which events of non-criminal conduct occurred. Accordingly, efforts to "tie" or "string" two courses of conduct together with the use of *non-criminal* conduct in order to create one, *same* course of *criminal* conduct, must fail, as it does nothing more than corrupt the plain meaning of the statutory language. Thus, the question is: was this the same course of criminal conduct, or was this two or more courses of conduct tied or strung together by non-criminal conduct?

The majority opinion requires that "the same course of criminal conduct" be *uninterrupted* or *continuous* – even though no such requirement appears in the statute itself. The majority's addition of a requirement that a "course of criminal conduct" be uninterrupted by non-criminal conduct not only fails to give § 610.140.1 the liberal construction the caselaw requires, but it violates a cardinal rule of statutory construction: "This Court 'cannot "add statutory language where it does not exist"; rather, [the Court] must interpret "the statutory language as written by the legislature."'" *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 122 (Mo. 2023) (quoting *Li Lin v. Ellis*, 594 S.W.3d 238, 244 (Mo. 2020)).

The majority's requirement of continuity, or lack of interruption, is also inconsistent with this Court's decision in *State v. Snider*, 869 S.W.2d 188 (Mo.

15

App. E.D. 1993), which held that multiple criminal offenses committed over a two-year period could be considered part of "one . . . course of conduct," even though "[i]t would strain common sense to say that [the defendant's] course of conduct . . . was 'uninterrupted.'" *Id.* at 197. Even if a "continuity" requirement were properly imported into § 610.140.1, the circuit court found that such a requirement was *satisfied here*: after hearing D.B.'s testimony, the court recognized that he was "still in this business while he's in jail," and that his criminal conduct was "continuing" during that period.

The fact that non-criminal conduct may have intervened between D.B.'s two efforts to manufacture methamphetamine should not prevent the two offense from being considered part of "the same course of criminal conduct." Presumably, in many cases in which an individual commits similar crimes in a short period of time, their criminal activity is not literally continuous, but is interrupted by other, non-criminal activities: eating; sleeping; working at a lawful occupation; child-rearing; household chores or errands; or any number of recreational activities. It is unclear why such interruptions would have the effect of turning one "course of criminal conduct" into two.

Notably, although the majority purports to apply a "plain meaning" analysis to § 610.140.1, it fails to follow the approach required by scores of Supreme Court cases:

> "In the absence of a statutory definition, words will be given their plain and ordinary meaning ***as derived from the dictionary***."

*Matthews v. Harley-Davidson*, 685 S.W.3d 360, 369 (Mo. 2024) (emphasis added; quoting *State v. Oliver*, 293 S.W.3d 437, 446 (Mo. 2009)); *see also, e.g.* *Cedar Cnty. Comm'n v. Parson*, 661 S.W.3d 766, 776 (Mo. 2023) ("'Absent

16

express definition, statutory language is given its plain and ordinary meaning, as typically found in the dictionary.'" (quoting *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. 2018) (in turn quoting *State v. Brookside Nursing Ctr., Inc.*, 50 S.W.3d 273, 276 (Mo. 2001))).

Even a fleeting reference to the dictionary demonstrates that a "course of conduct" need not be continuous, and need not be uninterrupted by unrelated actions or events. A "course" in the relevant sense is defined as:

> progression through a development or period or a series of acts or events[, *e.g.*,] the *course* of history
>
> . . .
>
> an ordered process or succession: such as
>
> a :  a number of lectures or other matter dealing with a subject[, *e.g.*,] took a *course* in zoology
>
> *also* : a series of such courses constituting a curriculum[, *e.g.*,] a premed *course*
>
> b :  a series of doses or medications administered over a designated period

*Course*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/course.

This definition, and the examples provided, demonstrate that a series of events may constitute a single "course of conduct," despite interruptions by unrelated acts or events. Obviously, the course of history unfolds over centuries, and may be frequently interrupted by extraneous events; a university course may be interrupted by holiday breaks, intervening weekends, other coursework, or extracurricular activities; a course of study may be interrupted by military service, or by breaks required for health-related or financial reasons; and a

17

course of medication may be interrupted by health events which require that the course of treatment be paused, and then resumed later.  None of these interruptions prevent a series of similar events from being considered one and the same "course."  I cannot understand why the majority does not adopt, or even acknowledge, this definition of a "course" of events, which is directly contrary to the purported "plain meaning" the majority instead espouses.

In a footnote the majority offers a single example of conduct which it contends *would* constitute "the same course of criminal conduct":

> [C]onsider a day-long, multi-circuit crime spree, the result being informations or indictments filed in multiple judicial circuits.  While the offenses could not be charged in the "same indictment or information," such a crime spree could render the offenses part of the "same course of criminal conduct."   Accordingly, the collective offenses of such crime spree could be considered for expungement as part of the "same course of criminal conduct" even though they could not be filed in the "same indictment or information."

Ironically, this exact hypothetical was posed to the State's counsel at oral argument – an attorney who specializes in such expungement cases across the State.  The State's attorney explained that she had handled multiple cases involving this scenario, and that in each one the circuit courts had <u>refused</u> to expunge the separate convictions.  Moreover, it is unclear that the "day-long, multi-circuit crime spree" the majority hypothesizes would meet its own definition of a "course of criminal conduct," since such a day-long crime spree would presumably be interrupted by non-criminal conduct:  driving from the location of one crime to the other; eating; re-filling the defendant's vehicle with gasoline; or perhaps completing a non-criminal errand, or visiting a friend.  In any event, even if multiple felony expungements were available in the

circumstance the majority describes, it hardly affords "the same course of criminal conduct" a liberal construction to hold that it only applies to "a day-long, multi-circuit crime spree."

The majority also emphasizes that D.B.'s two offenses were separated by more than two months. Notably, however, the two-month gap between D.B.'s offenses would not come close to defeating the "temporal proximity" required under the definition of "the same course of [criminal] conduct" applied in federal sentencing cases.

As explained in § I.C above, no one disputes that D.B. *committed two separate felonies*; the question is whether those two separate felonies were part of "the same course of criminal conduct." The majority offers no real rationale for rejecting D.B.'s argument that his two convictions were part of "the same course of criminal conduct," other than the fact that he committed separate crimes, at separate times. The majority's analysis essentially repeals the exception in § 610.140.1 for felonies committed as part of "the same course of criminal conduct," defeating its salutary remedial purpose.

## Conclusion

I would reverse the judgment, and remand with directions that the circuit court enter a judgment expunging _both_ of D.B.'s twenty-year-old convictions for manufacturing methamphetamine.

Alok Ahuja, Judge